**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| VERNON W. HILL, II, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-59 (RBW) |
| | ) | |
| DENNIS M. DIFLORIO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MOTION OF CERTAIN DEFENDANTS TO DISMISS OR TRANSFER VENUE**</u>

Certain defendants ("Defendants")[1] hereby move this Court to enter an

order:

1.    Dismissing this action for improper venue pursuant to Fed. R. Civ. P.
12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, transferring this
action pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the
District of New Jersey;

2.    Dismissing all claims brought by plaintiff InterArch, Inc. for failure to
state a claim pursuant to Fed. R. Civ. P. 12(b)(6) in view of a contractual
mandate that those claims be submitted to binding arbitration;

3.    Dismissing all claims against the individual Defendants for lack of
personal jurisdiction pursuant to Rule 12(b)(2); and

4.    Dismissing the due process claims premised upon *Bivens* v. *Six Unknown
Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct.
1999 (1971) and the Copyright Act claims for failure to state a claim upon
which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1]    This motion is made on behalf of all defendants other than Jack R. Bershad.

The grounds for this motion are stated in Certain Defendants'

accompanying Memorandum of Points and Authorities in Support of their Motion to

Dismiss or to Transfer Venue, which accompanies this Motion.

Respectfully submitted,

_____
/s/

Penny Shane                          Margaret K. Pfeiffer (D.C. Bar No. 358723)
SULLIVAN & CROMWELL LLP              Joseph J. Reilly (D.C. Bar No. 480824)
125 Broad Street                     SULLIVAN & CROMWELL LLP
New York, New York 10004             1701 Pennsylvania Avenue, N.W.
Tel.:  (212) 558-4000                Washington, DC  20006-5085
Fax:  (212) 558-3588                 Tel.: (202) 956-7500
                                     Fax:  (202) 956-6330

                                     Warren W. Faulk
                                     William M. Tambussi
                                     BROWN & CONNERY, LLP
                                     360 Haddon Avenue, P.O. Box 539
                                     Westmont, New Jersey 08108
                                     Tel.: (856) 854-8900
                                     Fax: (856) 858-4967

*Attorneys for Certain Defendants*

Dated:    Washington, D.C.
          March 24, 2008

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VERNON W. HILL, II, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Case No.  08-cv-59 (RBW) |
| | ) |
| DENNIS M. DIFLORIO, et al., | ) |
| | ) |
| Defendants. | ) |

**CERTAIN DEFENDANTS' MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION TO DISMISS OR TRANSFER VENUE**

Penny Shane
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel.:  (212) 558-4000
Fax:  (212) 558-3588

Margaret K. Pfeiffer (D.C. Bar No. 358723)
Joseph J. Reilly (D.C. Bar No. 480824)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006-5085
Tel.: (202) 956-7500
Fax:  (202) 956-6330

Warren W. Faulk
William M. Tambussi
BROWN & CONNERY, LLP
360 Haddon Avenue, P.O. Box 539
Westmont, New Jersey 08108
Tel.: (856) 854-8900
Fax: (856) 858-4967

*Attorneys for Certain Defendants*

Washington, D.C.
March 24, 2008

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........................................................................................2

FACTUAL BACKGROUND ...........................................................................................5

       A.    Defendants ....................................................................................5

             1.    Commerce Bancorp and Commerce Bank..........................5

             2.    The Individual Defendants...................................................5

       B.    Mr. Hill and His Employment Agreement with Commerce ...........6

             1.    Mr. Hill and His Termination ..............................................6

             2.    The Forum Selection and Governing Law Clauses
                  of Mr. Hill's Employment Agreement.................................7

       C.    Mrs. Hill, InterArch and InterArch's Contracts with
           Commerce ........................................................................................8

             1.    Mrs. Hill's and InterArch's Relationship with
                  Commerce...........................................................................8

             2.    The Forum Selection, Governing Law and
                  Arbitration Clauses of InterArch's Contracts .....................9

ARGUMENT ................................................................................................................11

    I.    Plaintiffs' Claims Should Be Dismissed for Lack of Venue Under
        Binding Contractual Forum Selection Clauses. ........................................11

    II.    Even if Venue in Camden County, New Jersey Were Not
        Exclusive, Venue Would Have to Be Transferred to the District of
        New Jersey Under 28 U.S.C. § 1404(a) for the Convenience of
        Parties and Witnesses and in the Interest of Justice...................................14

    III.    InterArch's Claims Must Be Dismissed in Any Event Because
        They Are Subject to a Binding Arbitration Agreement. ...........................17

    IV.    Plaintiffs' Claims Against the Individual Defendants Should Be
        Dismissed Because None of Those Defendants Has Sufficient
        Contacts with Washington, D.C. to Warrant This Court's
        Extension of Personal Jurisdiction Over Them. ........................................19

**TABLE OF CONTENTS**
**(Continued)**

V.    The First and Second Claims for Relief Must Be Dismissed
      Because They Fail to State a *Bivens* Claim. ...............................................23

      A.    As a Judicially Created Right of Action, *Bivens* Liability
            Has Been, and Must Remain, Confined to Narrow
            Circumstances Not Alleged Here....................................................24

      B.    The Complaint Fails to Allege That Commerce's Directors
            Acted Under Color of Federal Law. ..............................................28

      C.    Because Plaintiffs Assert Several Alternative Causes of
            Action, They Cannot Also State a *Bivens* Claim. .........................32

VI.   InterArch's Claim for Copyright Infringement Should Be
      Dismissed for Failure to State a Claim. ....................................................33

CONCLUSION...............................................................................................37

# TABLE OF AUTHORITIES

Page(s)

## *Cases*

*2215 Fifth St. Assoc.* v. *U-Haul Int'l, Inc.*,
148 F. Supp. 2d 50 (D.D.C. 2001) ........................................................................ 14

*Abu-Jamal* v. *National Pub. Radio*,
1997 WL 527349 (D.D.C. Aug. 21, 1997) ........................................................... 31

*American Directory Service Agency* v. *Beam*,
131 F.R.D. 635 (D.D.C. 1990) ............................................................................. 22

*Atherton* v. *FDIC*,
519 U.S. 213, 117 S. Ct. 666 (1997) .................................................................... 30

*Atlantigas Corp.* v. *Nisource, Inc.*,
290 F. Supp. 2d 34 (D.D.C. 2003) ................................................................. 19, 21

*Baker* v. *Henderson*,
150 F. Supp. 2d 13 (D.D.C. 2001) ....................................................................... 12

*Barham* v. *UBS Fin. Servs.*,
496 F. Supp. 2d 174 (D.D.C. 2007) ............................................................... 15, 16

*Berenson* v. *Nat'l Fin. Servs.*,
319 F. Supp. 2d 1 (D.D.C. 2004) ................................................................... 15, 16

** *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388, 91 S. Ct. 1999 (1971) ................................................. 1, 23, 24, 25

*Brown* v. *Pugh*,
2006 WL 2439859 (S.D. Ga. July 7, 2006) ......................................................... 32

*Browning* v. *Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ............................................................................. 29

*Burman* v. *Phoenix Worldwide Indus., Inc.*,
437 F. Supp. 2d 142 (D.D.C. 2006) ............................................................... 19, 21

*Cameron* v. *Thornburgh*,
983 F.2d 253 (D.C. Cir. 1993) ............................................................................. 15

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Cannon* v. *University of Chicago*,
441 U.S. 677, 99 S. Ct. 1946 (1979) ...................................................... 25

*Carlson* v. *Greene*,
446 U.S. 14, 100 S. Ct. 1468 (1980) ...................................................... 25

*Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
511 U.S. 164, 114 S. Ct. 1439 (1994) .................................................... 25

** *Commerce Consultants Int'l, Inc.* v. *Vetrerie Riunite S.p.A.*,
867 F.2d 697 (D.C. Cir. 1989) ............................................. 11, 12, 13, 14

*Continental Ins. Co.* v. *M/V Orsula*,
354 F.3d 603 (7th Cir. 2003) .................................................................. 11

** *Correctional Services Corp.* v. *Malesko*,
534 U.S. 61, 122 S. Ct. 515 (2001) ................................................. *passim*

*Davis* v. *Passman*,
442 U.S. 228, 99 S. Ct. 2264 (1979) ..................................................... 25

*DeLoach* v. *Philip Morris Cos.*,
132 F. Supp. 2d (D.D.C. 2000) ............................................................. 15

*E.E.O.C.* v. *St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997) ............................................................... 12

*Effects Assocs. Inc.* v. *Cohen*,
908 F.2d 555 (9th Cir. 1990) ................................................................. 35

*El-Fadl* v. *Central Bank of Jordan*,
75 F.3d 668 (D.C. Cir. 1996) ................................................................. 19

*Ellipso, Inc.* v. *Mann*,
2006 WL 229894 (D.D.C. Jan. 30, 2006) ............................................. 17

*Fayetteville Investors* v. *Commercial Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) ............................................................... 35

*Fields* v. *Thomson Printing Co., Inc.*,
363 F.3d 259 (3d Cir. 2004) .................................................................. 30

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*First Chicago Int'l* v. *United Exch. Co.*,
836 F.2d 1375 (D.C. Cir. 1988) .......................................................................19, 21

*Flocco* v. *State Farm Mutual Automobile Ins. Co.*,
752 A.2d 147 (D.C. 2000)...............................................................................22

*Godoy-Aguirre* v. *Gilkey*,
2006 WL 2585040 (E.D. Cal. Sept. 7, 2006).......................................................26

*Graham* v. *James*,
144 F.3d 229 (2d Cir. 1998)...........................................................................33

*GTE New Media Servs.* v. *BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000) ......................................................................20

\*\*  *Holly* v. *Scott*,
434 F.3d 287 (4th Cir. 2006)............................................................... *passim*

*Holz* v. *Terre Haute Regional Hospital*,
123 Fed. Appx. 712 (7th Cir. 2004) ...............................................................26, 29

*Hudson Valley Black Press* v. *IRS*,
409 F.3d 106 (2d Cir. 2005)...........................................................................26

*In re NBR Antitrust Litigation*,
207 Fed. Appx. 166 (3d Cir. 2006) .................................................................18

*In re U.S. Office Products Co. Securities Litig.*,
251 F. Supp. 2d 58 (D.D.C. 2003) ..................................................................35

*Jacob Maxwell, Inc.* v. *Veeck*,
110 F.3d 749 (11th Cir. 1997)......................................................................... 36

*Johns* v. *Rozet*,
770 F. Supp. 11 (D.D.C. 1991) ....................................................................... 22

*Jumara* v. *State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 2005).............................................................................. 14

*Libas Ltd.* v. *Carillo*,
329 F.3d 1128 (9th Cir. 2003)...................................................................... 26, 32

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Marsaw* v. *Thompson*,
133 Fed. Appx. 946 (5th Cir. 2005) ........................................................................ 26

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614, 105 S. Ct. 3346 (1985) ............................................................. 17, 18

*Morast* v. *Lance*,
807 F.2d 926 (11th Cir. 1987) ............................................................................... 31

*Ono* v. *Itoyama*,
884 F. Supp. 892 (D.N.J. 1995) ............................................................................ 30

*Overseas Partners* v. *PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd.*,
15 F. Supp. 2d 47 (D.D.C.1998) ........................................................................... 14

*Phil Singer Assocs.* v. *Philips Oral Healthcare, Inc.*,
2003 WL 23208271 (D.N.J. Dec. 16, 2003) .................................................. 17, 18

*Qunito* v. *Legal Times of Washington, Inc.*,
506 F. Supp. 554 (D.D.C. 1981) ........................................................................... 22

*Reuber* v. *United States*,
750 F.2d 1039 (D.C. Cir. 1984) ............................................................................ 31

*Richardson* v. *McKnight*,
521 U.S. 399, 117 S. Ct. 2100 (1997) .................................................................. 31

*Schweiker* v. *Chilicky*,
487 U.S. 412, 108 S. Ct. 2460 (1988) ............................................................ 24, 32

**   *Second Amendment Found.* v. *U.S. Conference of Mayors*,
274 F.3d 521 (D.C. Cir. 2001) ........................................................................ 19, 21

*Security Bank, N.A.* v. *Tauber*,
347 F. Supp. 511 (D.D.C. 1971) ........................................................................... 22

**   *Sinclair* v. *Hawke*,
314 F.3d 934 (8th Cir. 2003) ........................................................................... 26, 27

*Sudnick* v. *DOD*,
474 F. Supp. 2d 91 (D.D.C. 2007) ........................................................................ 24

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Tabas* v. *Mullane*,
  608 F. Supp. 759 (D.N.J. 1985) .............................................................. 30

*The Bremen* v. *Zapata Off-Shore Co.*,
  407 U.S. 1, 92 S. Ct. 1907 (1971) ........................................................ 12

*Transamerica Mortgage Advisors, Inc.* v. *Lewis*,
  444 U.S. 11, 100 S. Ct. 242 (1979) ...................................................... 25

*United States Naval Inst.* v. *Charter Commc'ns, Inc.*,
  936 F.2d 692 (2d Cir. 1991) .................................................................. 36

*Wachovia Bank* v. *Schmidt*,
  546 U.S. 303, 126 S. Ct. 941 (2006) ...................................................... 5

*Weatherly Cellaphonics Partners* v. *Hueber*,
  726 F. Supp. 319 (D.D.C. 1989) ............................................................ 18

*Welch* v. *Bancorp Mgmt. Advisors, Inc.*,
  675 P.2d 172 (Ore. 1983) ...................................................................... 30

*Wolf* v. *Westwood Mgmt.*,
  503 F. Supp. 2d 274 (D.D.C. 2007) ...................................................... 17

*Worldwide Network Servs.* v. *Dyncorp Int'l*,
  496 F. Supp. 2d 59 (D.D.C. 2007) ........................................................ 13

*Wyeth & Brother Ltd* v. *Cigna Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997) ................................................................ 13

*Zeiger* v. *Wilf*,
  755 A.2d 608 (N.J. Super. Ct. App. Div. 2000) .................................... 30

*Zephyr Aviation, L.L.C.* v. *Dailey*,
  247 F.3d 565 (5th Cir. 2001) ................................................................ 27

### *Statutes and Rules*

17 U.S.C. § 201 ...................................................................................... 34, 36

17 U.S.C. § 204 ...................................................................................... 34, 36

# TABLE OF AUTHORITIES
**(Continued)**

Page(s)

28 U.S.C. § 1404 ........................................................................................ 1, 14, 16

28 U.S.C. § 1406 .......................................................................................... 1, 3, 11

42 U.S.C. § 1983 ................................................................................................. 31

D.C. Code § 13-422 ...................................................................................... 19, 20

D.C. Code § 13-423 ...................................................................................... 19, 20

Fed. R. Civ. P. 19(c) ..................................................................................... 12, 36

Fed. R. Civ. P. 12(b)(2) .................................................................................. 1, 24

Fed. R. Civ. P. 12(b)(3) ............................................................................... 1, 3, 11

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 17

## *Other Authority*

3 M. Nimmer & D. Nimmer, *Nimmer On Copyright* (2007) .................................. 33, 37

Office of the Comptroller of the Currency, The Role
    of a National Bank Director: The Director's
    Book (Washington, D.C. 1997) ...................................................................... 27-28

Office of the Comptroller of the Currency, Policies and
    Procedures Manual PPM 5310-3: Policy for Taking
    Corrective Action (1993) ................................................................................... 28

Division of Banking Supervision and Regulation, Board
    of Governors of the Federal Reserve System, Bank
    Holding Company Supervision Manual (2007) ................................................... 28

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| VERNON W. HILL, II, et al.,                    ) | |
| ) | |
| Plaintiffs,          ) | |
| ) | |
| v.                    )          Case No.  08-cv-59 (RBW) | |
| ) | |
| DENNIS M. DIFLORIO, et al.,              ) | |
| ) | |
| Defendants.          ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

Certain Defendants (or "Defendants")[1] submit this memorandum in support of their Motion (1) to dismiss all claims in this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, to transfer the action pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the District of New Jersey; (2) to dismiss the claims brought by plaintiff InterArch, Inc. for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) in view of a contractual requirement that those claims be submitted to binding arbitration; (3) to dismiss all claims against the individual Defendants for lack of personal jurisdiction pursuant to Rule 12(b)(2); and (4) to dismiss the due process claims purportedly based upon *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971) and the Copyright Act claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1]    This Motion is made on behalf of all defendants other than Jack R. Bershad.

## PRELIMINARY STATEMENT

In their Complaint, plaintiffs Vernon W. Hill, II ("Mr. Hill"), Shirley Hill ("Mrs. Hill"), and InterArch, Inc. ("InterArch") (collectively, "Plaintiffs"), allege that defendants Commerce Bancorp, Inc. ("Commerce Bancorp"), Commerce Bank, N.A. ("Commerce Bank") (collectively, "Commerce"), eleven (11) individual directors and/or officers of Commerce Bancorp and/or Scott Hite ("Mr. Hite"), a former employee of InterArch (the "Individual Defendants"): (1) violated Plaintiffs' due process rights by virtue of certain actions taken against them, allegedly at the direction of and in concert with the Office of the Comptroller of the Currency (the "OCC") (First and Second Claims for Relief); (2) infringed InterArch's copyrights in violation of federal copyright law (Third Claim for Relief); (3) breached Mr. Hill's employment contract (Fourth and Eleventh Claims for Relief); (4) breached services agreements with InterArch (Fifth and Twelfth Claims for Relief); (5) were unjustly enriched at InterArch's expense (Sixth and Seventh Claim for Relief); (6) breached implied covenants of good faith pertaining to Mr. Hill's employment and InterArch's services (Eighth and Ninth Claims for Relief); (7) tortiously interfered with InterArch's economic advantage (Tenth Claim for Relief); and (8) intentionally inflicted emotional distress upon both Mr. and Mrs. Hill (Thirteenth Claim for Relief).

Dismissal or transfer of these claims to the U.S. District Court for the District of New Jersey is warranted for several reasons. First, all claims should be dismissed because venue does not lie in the District of Columbia. Mr. Hill's employment agreement with Commerce, which is attached to Plaintiffs' Complaint as Exhibit A (the "Employment Agreement"), provides that Mr. Hill "irrevocably, voluntarily, knowingly

and expressly consent[ed]" that any action "to enforce this Agreement, or to resolve any claim, controversy or dispute involving it," must be filed in either the Superior Court in Camden County, New Jersey, or the U.S. District Court for the District of New Jersey, Camden Vicinage.  (Compl., Ex. A (Employment Agreement), § 18.9(a).)  Consistent with this forum selection clause, the Employment Agreement also includes a governing law clause requiring application of New Jersey law.  (*Id*., Ex. A (Employment Agreement), § 18.12.)  Similarly, InterArch's Agency Agreement with Commerce, signed by Mrs. Hill and attached to the Complaint as Exhibit C (the "Agency Agreement"), selects "the federal and state courts located in the County of Camden, State of New Jersey" as the sole judicial forums for claims "relating to this Agreement."  (*Id*., Ex. C (Agency Agreement), ¶ 10.)  The Agency Agreement, too, is governed by New Jersey law.  (*Id*.)  Because of these binding forum selection and governing law clauses, all of Plaintiffs' claims should be dismissed for lack of venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

Alternatively, all claims should be transferred to the District of New Jersey based on the convenience and interest-of-justice factors of 28 U.S.C. § 1404(a). The Plaintiffs consented to jurisdiction there, reside there and conduct business there.  All allegedly wrongful acts and/or omissions took place there.  Commerce is headquartered there.  All of the twelve Individual Defendants conduct business in New Jersey, but conduct no business here.

InterArch's claims are, moreover, subject to binding arbitration under the terms of the Agency Agreement, prior to judicial review of the arbitration in the New Jersey courts.  Accordingly, if InterArch's claims are not dismissed or transferred for the

-3-

reasons stated above, they should be dismissed pursuant to InterArch's agreement to arbitrate.

In addition, the twelve Individual Defendants are entitled to dismissal of all claims against them for lack of personal jurisdiction. The Complaint is devoid of facts showing any contacts by the Individual Defendants with this District, much less the type and quantum of contacts necessary for this Court to secure personal jurisdiction over them. The Complaint merely asserts, in wholly conclusory language, that "[u]pon information and belief, the Defendants have had substantial contacts with this District." (Compl. ¶ 27.) This conclusory charge merely parrots an aspect of the jurisdictional standard. It does not differentiate among the Individual Defendants, and it comes nowhere close to satisfying Plaintiffs' burden of identifying specific facts to invoke this Court's jurisdiction.

Finally, even if jurisdiction and venue lay in this District, the purported federal claims would have to be dismissed, because none of them is cognizable. The purported *Bivens* claims fail for two reasons: *Bivens* does not apply to private actors such as bank directors or officers, who are not (and cannot be) properly alleged to have acted "under color of federal law"; and *Bivens* does not apply where, as here, alternative remedies have been alleged. InterArch's copyright infringement claim cannot stand because InterArch waived any right to pursue such a claim in a Master Agreement for Architectural/Engineering/Consulting Services with Commerce, which Plaintiffs have attached to their Complaint as Exhibit B (the "Master Agreement"). Accordingly, if the Court reaches the merits of the *Bivens* and copyright claims, those claims should be dismissed with prejudice.

# FACTUAL BACKGROUND[2]

### A.     Defendants

#### 1.     Commerce Bancorp and Commerce Bank

Commerce Bancorp is a bank holding company "incorporated in New Jersey." (Compl. ¶ 23.) Commerce Bank "is a national banking association" and "a wholly-owned subsidiary of Commerce Bancorp, Inc."[3] (*Id.* ¶ 24.) Commerce Bancorp, as the Complaint alleges, is "the largest bank holding company still headquartered in New Jersey." (*Id.* ¶ 2.) Commerce serves well over two million customers, and employs approximately 15,000 persons.[4] (*Id.* ¶ 2.)

#### 2.     The Individual Defendants

All of the Individual Defendants other than Mr. Hite allegedly have been "members of the Board of Directors of the Holding Company [*i.e.*, Commerce Bancorp] and/or Officers of the Holding Company." (Compl. ¶ 21.) The Complaint uses the term "Commerce's Directors" to describe these individuals, a convention adopted here for convenience of the Court, despite the fact that, as the Complaint itself suggests, some of those individuals are officers and not directors. (*Id.*) Each of Commerce's Directors allegedly has an office address in "Cherry Hill, New Jersey." (*Id.*, Caption.) Mr. Hite,

---

[2]     Unless otherwise indicated, Defendants set out the alleged facts and assume their truth for purposes of this Motion. Defendants reserve their right to contest any and all facts.

[3]     A "national banking association" is a "corporate entit[y] chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury." *Wachovia Bank* v. *Schmidt*, 546 U.S. 303, 306, 126 S. Ct. 941, 944 (2006); *cf.* Compl. ¶ 24 (mistakenly describing Commerce Bank as "a Pennsylvania corporation").

[4]     In October 2007, TD Bank Financial Group "announced that it had reached a definitive agreement to acquire" Commerce Bancorp. (Compl. ¶ 33.) That transaction is expected to close in the near future.

the remaining Individual Defendant, is described as "a resident of the State of New

Jersey."  (*Id*. ¶ 22.)

> ### B.    Mr. Hill and His Employment Agreement with Commerce
>
> ### 1.    Mr. Hill and His Termination

Mr. Hill, too, "is a New Jersey resident."  (Compl. ¶ 18.)  For many years,

he served as "the President and Chief Executive Officer of Commerce Bank and

Commerce Bancorp."  (*Id*.)  According to the Complaint, "on June 28, 2007,

Commerce's Board executed a Consent Order with the OCC and a Memorandum of

Understanding with the" Federal Reserve Bank of Philadelphia, which "require[d]

Commerce to create a plan detailing steps the Board will take to address 'necessary or

desirable changes' to Commerce's management structure."[5]  (*Id*. ¶¶ 49-50.)  That same

day, Commerce Bancorp's board of directors invoked the "Without Cause" termination

provision of Mr. Hill's Employment Agreement with Commerce, thereby relieving

Mr. Hill of his positions with Commerce.  (*Id*. ¶¶ 32, 35-45, 48-49.)  The Complaint

attaches a copy of the Employment Agreement as the pleading's "Exhibit A."  (*Id*. ¶ 35.)

According to the Complaint, Commerce Bancorp's board took these

actions under pressure from the OCC, thereby giving rise to Mr. Hill's purported *Bivens*

claim.  (Compl. ¶¶ 46-55.)  The Complaint further alleges that Commerce thereafter has

wrongfully withheld money and benefits that allegedly are due to Mr. Hill under the

---

[5]      To clarify an ambiguity in the Complaint, Defendants note that, as a matter of
public record, the Consent Order with the OCC was executed by the entity that agency
regulates, namely Commerce Bank; the Memorandum of Understanding with the Federal
Reserve was executed by the entity that agency regulates, namely Bancorp.  (*See* Form 8-
K & Attachments, filed by Commerce Bancorp with the Securities and Exchange
Commission on June 29, 2007.)

terms of the Employment Agreement and its "Without Cause" termination provision.  (*Id.* ¶¶ 57-64.)

> **2.      The Forum Selection and Governing Law Clauses of Mr. Hill's Employment Agreement**

Two provisions of Mr. Hill's Employment Agreement are highly pertinent to the issues on this Motion.  First, the contract contains a forum selection clause requiring that all claims involving the contract be brought in courts located in Camden County, New Jersey.  In full, the clause provides as follows:

> **18.9    New Jersey Jurisdiction.**  Commerce and Hill irrevocably, voluntarily, knowingly and expressly consent to:
>
> > **(a)      Courts in Camden, NJ.**  The exclusive jurisdiction of the Superior Court, Law Division, Camden County, New Jersey or the United States District Court for the District of New Jersey, Camden Vicinage, to enforce this Agreement, or to resolve any claim, controversy or dispute involving it … .

(Compl., Ex. A (Employment Agreement), § 18.9(a).)

Second, Mr. Hill's Employment Agreement contains a governing law clause, which — consistent with the forum selection clause — chooses New Jersey's law as the law to be applied:  "This Agreement shall be governed and construed, and the legal relationships of the parties determined, in accordance with the laws of the State of New Jersey applicable to contracts executed and to be performed solely in the State of New Jersey."  (Compl., Ex. A (Employment Agreement), § 18.12.)

C.    **Mrs. Hill, InterArch and InterArch's Contracts with Commerce**

1.    **Mrs. Hill's and InterArch's Relationship with Commerce**

Mrs. Hill "is also a New Jersey resident."  (Compl. ¶ 19.)  She is the "founder, President, and owner of InterArch" (*id*.), "an architectural and design firm incorporated in New Jersey, having its principal place of business in the Township of Mount Laurel, Burlington County, New Jersey."  (*Id*. ¶ 20.)

The Complaint attaches as Exhibit C the Agency Agreement between InterArch and Commerce, dated January 15, 2002.  On its face, the Agency Agreement explains that it "memorialize[s] certain terms and conditions by which [the parties'] relationship has been governed and by which they desire their relationship to continue to be governed."  (Compl., Ex. C (Agency Agreement), Recital.)  The Agency Agreement also provides, in Paragraph 2, that any agreement for "specific Services … shall be set forth in a separate agreement signed by both parties hereto; *it being agreed that the terms set forth in this Agreement shall be deemed a part of any such separate agreement*." (*Id*., Ex. C (Agency Agreement), ¶ 2 (emphasis added).)

One such "separate agreement," which addressed rates and other matters for the provision of "Services" from "January 1, 2006 to December 31, 2006," is the Master Agreement, which Plaintiffs attached as Exhibit B to their Complaint.  (Compl., Ex. B (Master Agreement), Preamble; *see id*. at ¶¶ 75-78.).[6]  Subsequently, according to the Complaint, InterArch and Commerce agreed to a proposal by InterArch for a contract

---

[6]    As the Complaint elsewhere alleges, "it was Commerce and InterArch's practice for InterArch to submit a proposal of services ('Proposal of Services') to Commerce for the upcoming year.  The Proposal of Services included both a list of services that InterArch intended to perform for Commerce and a rate schedule for that work."  (Compl. ¶ 70.)  The Agency Agreement also is "Addendum C" to the Master Agreement. (Compl., Ex. B (Master Agreement).)

for calendar year 2007 with "the same terms and conditions as the Master Agreement; therefore, all of the terms and conditions of the Master Agreement remained in effect through December 31, 2007."  (*Id*. ¶ 85.)

The Complaint alleges that Commerce breached its agreements with InterArch during 2007 by imposing a 10% "holdback" on payments of invoices, refusing to pay certain other invoices, and "terminat[ing] its agreements with InterArch on October 31, 2007."  (Compl. ¶ 92; *see id*. at ¶¶ 93-99.)  An allegation of OCC involvement in these breaches is the purported hook for InterArch's and Mrs. Hill's *Bivens* claim.  (*Id*.)

The Complaint also alleges that Commerce recruited Mr. Hite and other InterArch employees, who chose to "resign[] from their positions at InterArch" the day after the October 31, 2007 termination and later "accepted positions with Commerce," thereby allegedly giving rise to InterArch's purported tortious interference claim. (Compl. ¶¶ 109-12.)  InterArch and Mrs. Hill also allege that Commerce breached a purported obligation in the Agency Agreement to indemnify InterArch and Mrs. Hill for various expenses, including costs "incurred as a result of investigations of Commerce by the OCC and other federal agencies."  (*Id*. ¶¶ 90-91.)  Finally, InterArch alleges that following its termination by Commerce, Commerce infringed certain copyrights purportedly belonging to InterArch and "relating to the construction of Commerce buildings."  (*Id*. ¶¶ 114-25.)

## 2. The Forum Selection, Governing Law and Arbitration Clauses of InterArch's Contracts

In a forum selection clause very similar to the one appearing in Mr. Hill's Employment Agreement, InterArch and Commerce agreed, in their Agency Agreement,

that "the federal and state courts located in the County of Camden, State of New Jersey, shall have exclusive jurisdiction to hear and determine any suits, actions or proceedings and to settle any disputes between the parties relating to this Agreement." (Compl., Ex. C (Agency Agreement), ¶ 10.)  As noted above, the Agency Agreement is "deemed a part of any … separate agreement" between the parties, including the Master Agreement. (*Id*., Ex. C (Agency Agreement), ¶ 2.)

The Agency Agreement also contains a governing law provision very much like the one found in Mr. Hill's Employment Agreement.  This clause of the Agency Agreement provides that the contract "will be governed by, and construed and interpreted in accordance with, the laws of the State of New Jersey applicable to contracts entered into, and to be fully performed, in the State of New Jersey." (Compl., Ex. C (Agency Agreement), ¶ 10.)

Finally, the Agency Agreement also provides that any judicial action (even in the correct venue) must be preceded by, and consistent with, binding arbitration. Specifically, Paragraph 18(a) of the contract states as follows:

> 18.    <u>Arbitration</u>
>
> (a)    Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

(*Id*., Ex. C (Agency Agreement), ¶ 18(a).)  The Complaint does not allege that the parties ever "agree[d] otherwise," so the arbitration clause fully applies here.  The Agency Agreement further specifies that "[t]he award rendered by the arbitrator or arbitrators

shall be final, and judgment may be entered upon in accordance with applicable law in any court having jurisdiction thereof."  (*Id*., Ex. C (Agency Agreement), ¶ 18(c).)

## ARGUMENT

### I.  Plaintiffs' Claims Should Be Dismissed for Lack of Venue Under Binding Contractual Forum Selection Clauses.

Venue does not lie in this District because broadly worded forum selection clauses in both Mr. Hill's Employment Agreement and InterArch's Agency Agreement dictate that the state and federal courts in Camden County, New Jersey are the only courts that may hear Plaintiffs' claims.  Accordingly, those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).  *See* 28 U.S.C. 1406(a) (permitting dismissal where venue is improper); *Commerce Consultants Int'l, Inc.* v. *Vetrerie Riunite, S.p.A.*, 867 F.2d 697, 697-700 (D.C. Cir. 1989) (affirming dismissal for improper venue based on forum selection clause); *Continental Ins. Co.* v. *M/V Orsula*, 354 F.3d 603, 606-08 (7th Cir. 2003) (same).

In Mr. Hill's Employment Agreement, the parties agreed that those courts shall have "exclusive jurisdiction" to "enforce this Agreement, or to resolve any claim, controversy or dispute involving it."  (Compl., Ex. A (Employment Agreement), § 18.9(a).)  InterArch's Agency Agreement, signed by Mrs. Hill as InterArch's President, similarly vests "exclusive jurisdiction" in courts located in Camden County, New Jersey to hear any and all claims "relating to this Agreement."  (*Id*., Ex. C (Agency Agreement), ¶ 10.)  Consistent with these binding forum selection clauses, both agreements also

provide that New Jersey law determines the rights and obligations of the parties. (*Id.*, Ex. A (Employment Agreement), § 18.12; Ex. C (Agency Agreement), ¶ 10.)[7]

Forum selection clauses like those in the Employment Agreement and Agency Agreement "'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Commerce Consultants Int'l*, 867 F.2d at 699 (quoting *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913 (1972)). Where as here the "'choice of [a particular] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen,'" the resisting party can avoid that choice only by showing "'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Commerce Consultants Int'l*, 867 F.2d at 699 (quoting *The Bremen*, 407 U.S. at 12, 18, 92 S. Ct. at 1914, 1917).

Both of the individual Plaintiffs in this case reside in New Jersey, and InterArch is incorporated and maintains its principal place of business there. (Compl. ¶ 18-20.) Plaintiffs make no allegation that trial in New Jersey would even be inconvenient, let alone so "gravely difficult" as to deprive them of their day in court, nor could they do so.

Venue, therefore, does not lie outside Camden County, New Jersey for any of Plaintiffs' claims. The forum selection clauses plainly cover Plaintiffs' contract claims, *i.e.*, the Complaint's Fourth through Ninth, Eleventh and Twelfth Claims for

---

[7]     As exhibits to the Complaint, these agreements are considered a part of the pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Furthermore, a court may consider an exhibit to a pleading "without the need to convert the motion to dismiss into one for summary judgment." *Baker* v. *Henderson*, 150 F. Supp. 2d 13, 15 n.2 (D.D.C. 2001); *see E.E.O.C.* v. *St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Relief.[8]  The broad language of those clauses also applies to their tort claims, *i.e.*, the Complaint's First through Third, Tenth and Thirteenth Claims for Relief.  As "courts have found," plaintiffs cannot "circumvent an otherwise applicable forum selection clause … by simply pleading non-contractual claims" because such an outcome would "run[] counter to the law favoring forum selection clauses."  *Worldwide Network Servs.* v. *Dyncorp Int'l*, 496 F. Supp. 2d 59, 63 (D.D.C. 2007) (internal quotation marks omitted).   Plaintiffs in this case certainly cannot do so, in view of the breadth of the forum selection clauses to which they agreed.  Specifically, the clause in Mr. Hill's Employment Agreement covers not only claims that seek to "enforce this Agreement," but also those seeking "to resolve [a] claim, controversy or dispute involving it." (Compl., Ex. A (Employment Agreement), § 18.9(a).)  The Agency Agreement, similarly, covers all claims "relating to this Agreement."  (Compl., Ex. C (Agency Agreement), ¶ 10); *see Worldwide Network Servs.*, 496 F. Supp. 2d at 63 (citing *Wyeth & Brother Ltd* v. *Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, *J.*) (applying a broad reading to a forum selection clause that covered "disputes" not only "arising under" but also "arising in relation to" the contract)).

Because venue for all of Plaintiffs' claims lies only in the courts located in Camden County, New Jersey, those claims should be dismissed.  *See*, *e.g.*, *Commerce Consultants Int'l, Inc.*, 867 F.2d at 697-700.

---

[8]     (Compl., Ex. C (Agency Agreement), ¶ 10.)  While InterArch alleges breach of the Master Agreement as well as the Agency Agreement, the Agency Agreement's forum selection clause and other terms are "deemed a part of" the Master Agreement. (*Id*. ¶ 2.)

II.     **Even if Venue in Camden County, New Jersey Were Not Exclusive, Venue Would Have to Be Transferred to the District of New Jersey Under 28 U.S.C. § 1404(a) for the Convenience of Parties and Witnesses and in the Interest of Justice.**

Despite the language in *Commerce Consultants International* describing a forum selection clause as stripping the court of "venue," 867 F.2d at 697-98, some District Courts in this Circuit have held that, if venue would otherwise be proper here and the forum selection clause would permit prosecution of the action in another federal forum, the better approach is to "give effect to the forum selection clause" through application of the so-called "convenience transfer" statute, 28 U.S.C. § 1404(a).[9]  *E.g.*, *2215 Fifth St. Assoc.* v. *U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 57-58 (D.D.C. 2001). Under this mode of analysis, the forum selection clause still "'should control absent a strong showing that'" Section 1404(a)'s convenience factors require it to be set aside.  *Id.* at 58 (quoting *Overseas Partners* v. *PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd.*, 15 F. Supp. 2d 47, 54 (D.D.C.1998)).  Here, Plaintiffs do not — and could not — meet their burden of alleging facts constituting a "strong showing."  *2215 Fifth St. Assoc.*, 148 F. Supp. 2d at 58; *see also Jumara* v. *State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 2005) (parties resisting a forum selection clause bear the burden of showing "why they should not be bound by [the] contractual choice of forum" under Section 1404(a)). Indeed, in this case, the application of Section 1404(a)'s convenience factors would point overwhelmingly in the same direction as the forum selection clauses, and therefore

---

[9]     Section 1404(a) provides as follows:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

should result in a transfer of Plaintiffs' claims to the federal court in Camden County, New Jersey.[10]

The District of New Jersey would be convenient for all of the parties. Mr. Hill "is a New Jersey resident." (Compl. ¶ 18.) Mrs. Hill "is also a New Jersey resident." (*Id*. ¶ 19.) InterArch is "incorporated in New Jersey, having its principal place of business in the Township of Mount Laurel, Burlington County, New Jersey." (*Id*. ¶ 20.) While plaintiffs ordinarily enjoy some deference to their choice of forum, "courts afford 'substantially less deference' to that choice" where, as here, "plaintiff[s] [are] not resident[s] of that forum." *Barham* v. *UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007) (quoting *DeLoach* v. *Philip Morris Cos.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000)). Moreover, as the Complaint alleges, Commerce Bancorp is both "incorporated in" and "headquartered in New Jersey." (Compl. ¶¶ 2, 23.) All of the twelve Individual Defendants conduct business there, and conduct none here. (*Id*., Caption, ¶ 22.) And Plaintiffs' claims arise from their work in New Jersey for Commerce. (Compl. ¶¶ 57-64, 96-125.)

In evaluating convenience, courts also look to public interest factors. *Berenson* v. *Nat'l Fin. Servs.*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004) (Walton, *J*.). As this Court noted in *Berenson*, another action that primarily involved claims arising under the law of the state to which transfer was proposed, "[t]he most significant of these [public interest factors] in this case is the ability of the [transferee] court to interpret and apply the local law applicable to this litigation." *Id*. Both Mr. Hill's Employment Agreement

---

[10]    This Court has discretion to order a transfer of this action even though, as shown below, it lacks personal jurisdiction over the Individual Defendants. *See Cameron* v. *Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993).

and InterArch's Agency Agreement, as noted above, contain choice-of-law clauses mandating the application of New Jersey state law.  (Compl., Ex. A (Employment Agreement), § 18.12; *id*., Ex. C (Agency Agreement), ¶ 10.)  "Clearly, this Court's [New Jersey] colleagues have greater familiarity with [New Jersey] law and therefore superior ability to accurately apply [New Jersey] law than would this Court."  *Berenson*, 319 F. Supp. 2d at 5.

Another public interest factor weighing in favor of transfer is the presence of related litigation in the transferee forum.  *Barham*, 496 F. Supp. 2d at 180.  In the U.S. District Court for the District of New Jersey, there are a number of consolidated shareholder class actions against Commerce Bancorp and Mr. Hill (among others) that address many of the issues addressed by this lawsuit, such as alleged insider and related party transactions involving Mr. Hill and Mrs. Hill.  Although a proposed settlement of these actions has been reached with respect to all defendants except Mr. Hill (who will be dismissed from the litigation without prejudice), that settlement is subject to a number of conditions, including final approval by the District Court.  Thus, despite the pending settlement, these related actions provide an additional factor favoring the District of New Jersey as the appropriate venue for this case.[11]

In sum, if this Court declines to dismiss this case for lack of venue, it should transfer the action to the District of New Jersey under 28 U.S.C. § 1404(a).

---

[11]    The consolidated lawsuits are captioned *Pearl E. Lucas, individually and derivatively on behalf of Commerce Bancorp, Inc.* v. *Vernon W. Hill, II, et al.*, Civil Action No. 07-cv-0349; *Sheetmetal Workers' National Pension Fund, derivatively on behalf of Commerce Bancorp, Inc.* v. *Vernon W. Hill, II, et al.*, Civil Action No. 07-cv-2269; and *S.L. Lerner, individually and derivatively on behalf of Commerce Bancorp, Inc.* v. *Vernon W. Hill, II, et al.*, Civil Action No. 07-cv-3295.

**III.    InterArch's Claims Must Be Dismissed in Any Event Because They Are Subject to a Binding Arbitration Agreement.**

Even if venue were proper here, InterArch's claims would have to be dismissed because they are subject to binding arbitration pursuant to the Agency Agreement.  (*See* Compl., Ex. C (Agency Agreement), ¶ 18(a) (mandating binding arbitration of all "[c]laims, disputes and other matters" that either (1) "aris[e] out of" or (2) "relat[e] to [the Agency] Agreement or breach thereof").)   Accordingly, those claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See Ellipso, Inc.* v. *Mann*, 2006 WL 229894, at *2 (D.D.C. Jan. 30, 2006) (granting Rule 12(b)(6) motion to dismiss based on presence of arbitration clause); *Phil Singer Assocs.* v. *Philips Oral Healthcare, Inc.*, 2003 WL 23208271, at *2 (D.N.J. Dec. 16, 2003) (arbitrable claims should be dismissed).

By the plain language of the Agency Agreement, InterArch expressly agreed to submit its claims to an arbitrator, whose "award … shall be final."  (Compl., Ex. C (Agency Agreement), ¶ 18(c).)  The clear language of the agreement is compelling, particularly in view of the strong federal policy in favor of arbitration.  *See Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985).  Courts recognize that this policy is particularly strong where, as in the case of the Agency Agreement, an expansive arbitration provision directs arbitration of "any disputes" arising out of a contract.  *Wolf* v. *Westwood Mgmt.*, 503 F. Supp. 2d 274, 281-82 (D.D.C. 2007).

The case law makes clear that InterArch's claims for violation of due process rights, breach of contract, copyright infringement, *quantum meruit*/unjust enrichment, promissory estoppel, breach of implied covenant of good faith and fair

-17-

dealing, and contractual indemnification are both arbitrable and covered by the broad language in the Agency Agreement's arbitration clause.  In *Weatherly Cellaphonics Partners* v. *Hueber*, 726 F. Supp. 319 (D.D.C. 1989), for example, this Court held that plaintiff's breach of contract, breach of fiduciary duty and fraud claims were arbitrable under the broad arbitration clause covering "[a]ny disputes under this Agreement," and noted that it "fails to comprehend how this dispute could be beyond the scope of the Agreement when the Agreement" — like the InterArch contracts at issue here — "provides the only basis for any of [plaintiffs'] claims against [defendants]."  *Id.* at 321. Similarly in *Phil Singer Assocs.*, the court held that an arbitration clause providing that "[a]ny controversy or dispute between the parties hereto arising out of or relating to this Agreement or the breach thereof shall be finally settled by arbitration," governed not only direct claims for breach of contract, but also claims for unjust enrichment, *quantum meruit* and promissory estoppel, among others.  2003 WL 23208271, at * 1-2; *see also Mitsubishi Motors Corp.*, 473 U.S. at 626-27, 105 S. Ct. at 3354 (absent compelling considerations, there is no basis for disfavoring arbitration of claims implicating federal rights); *In re NBR Antitrust Litigation*, 207 Fed. Appx. 166, 172 (3d Cir. 2006) ("We fail to see how . . . a claim [for breach of the covenant of good faith and fair dealing] is anything but contractual, and as a claim brought under contracts containing broad arbitration clauses, it must be arbitrated.").

       For these reasons, InterArch's claims must be dismissed.

**IV.  Plaintiffs' Claims Against the Individual Defendants Should Be Dismissed Because None of Those Defendants Has Sufficient Contacts with Washington, D.C. to Warrant This Court's Extension of Personal Jurisdiction Over Them.**

"When personal jurisdiction is challenged," the plaintiff "'bears the burden of establishing personal jurisdiction over *each individual defendant*.'"  *Burman* v. *Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 147 (D.D.C. 2006) (Walton, *J.*) (emphasis added) (quoting *Atlantigas Corp.* v. *Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003)).  To meet this burden, the plaintiff "cannot rely on conclusory allegations."  *Burman*, 437 F. Supp. 2d at 147 (quoting *Atlantigas Corp.*, 290 F. Supp. 2d at 42).  Instead, "'a plaintiff must allege specific facts connecting [the] defendant with the forum.'"  *Second Amendment Found.* v. *U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *First Chicago Int'l* v. *United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)).  Plaintiffs in this case have failed to allege any "specific facts connecting" any of the Individual Defendants with this District.  Accordingly, all claims against the Individual Defendants should be dismissed for lack of personal jurisdiction.

"Under District of Columbia law, personal jurisdiction can be satisfied either by demonstrating that the court has general jurisdiction pursuant to D.C. Code § 13-422, or that the court has [specific] personal jurisdiction pursuant to the District of Columbia long-arm statute, § 13-423."  *Burman*, 437 F. Supp. 2d at 147; *see El-Fadl* v. *Central Bank of Jordan*, 75 F.3d 668, 671-72 (D.C. Cir. 1996).   Plaintiff also must allege that a defendant's contacts with Washington, D.C. are sufficient to satisfy due process.  *Burman*, 437 F. Supp. 2d at 148.

The District of Columbia permits the exercise of general jurisdiction, which allows a defendant to be sued here regardless of whether there is a nexus between

the forum and plaintiff's claim, only if the defendant is "domiciled in, organized under the laws of, or maintain[s] his or its principal place of business in, the District of Columbia." D.C. Code § 13-422. Plaintiffs nowhere allege that any of the Individual Defendants reside in or are employed in the District of Columbia. To the contrary, the Complaint describes each of them as having an office address in "Cherry Hill, New Jersey." (Compl., Caption.) Thus this Court lacks general personal jurisdiction over them.

For a court to exercise specific personal jurisdiction over a defendant, the defendant's alleged contacts with the forum must relate to plaintiff's claims for relief. *See* D.C. Code § 13-423(b); *GTE New Media Servs.* v. *BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). In this case, the only subsection of the D.C. long-arm statute that is even potentially available to Plaintiffs is Subsection 13-423(a)(1), which permits jurisdiction where a plaintiff's claim for relief arises from the defendant's "transacting any business in the District."[12] For business transactions, Subsection 13-423(a)(1) "generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry." *GTE New Media Servs.*, 199 F.3d at 1347.

Plaintiffs' only allegation regarding specific personal jurisdiction is that "[u]pon information and belief, the Defendants have had substantial contacts with this District in connection with the allegations herein." (Compl. ¶ 27.) This allegation, which

---

[12]    The other six subsections of the D.C. long-arm statute are inapplicable on their face. Subsection (a)(2) concerns a defendant who "contract[ed] to supply services in the District." Subsections (a)(3) and (a)(4) require the plaintiff to have suffered injury "in the District." Subsection (a)(5) is addressed to claims arising from an ownership interest of defendant in "real property in the District of Columbia." Subsection (a)(6) concerns sureties, and subsection (a)(7) concerns domestic relations.

merely parrots the language of an aspect of the pertinent standard, is wholly conclusory and therefore does nothing to satisfy Plaintiff's burden of identifying "'specific acts connecting [the] defendant with the forum.'"  *Second Amendment Found.*, 274 F.3d at 524 (considering a conspiracy-based personal jurisdiction theory and rejecting the conclusory allegation that defendants "conspired together") (quoting *First Chicago Int'l.*, 836 F.2d at 1378); *cf.*, *Bell Atlantic Corp.* v. *Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks omitted)).  This allegation also is defective because a plaintiff "'cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant.'" *Burman*, 437 F. Supp. 2d at 147 (quoting *Atlantigas Corp.*, 290 F. Supp. 2d at 42).

> Plaintiffs make one other allegation concerning contacts in this District, but even then do not allege explicitly that any Individual Defendants participated in the contacts:  "Upon information and belief, several meetings and other contacts with the OCC in connection with [the] matter [of Mr. Hill's termination] occurred in this District." (Compl. ¶ 51.)  Beyond the absence of any indication that Individual Defendants participated in such meetings and contacts, this conclusory allegation suffers from the fatal defects noted above.  Moreover, as the D.C. Circuit has noted, without a strict standard for establishing personal jurisdiction over defendants alleged to have participated in meetings in this District, "people would be unable to meet in the nation's capital to discuss issues of concern without subjecting themselves to the jurisdiction of D.C. courts."  *Second Amendment Found.*, 274 F.3d at 524.

Even if personal jurisdiction could be exercised over the Individual Directors based on their employment activities with Commerce — and it cannot be — they would still be exempt from personal jurisdiction by virtue of the "corporate shield doctrine." The principle underlying the corporate shield doctrine is that "[i]t is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit, but for the benefit of his employer." *American Directory Service Agency* v. *Beam*, 131 F.R.D. 635, 641 (D.D.C. 1990).

The corporate shield doctrine has been applied by District of Columbia courts. Thus, it has been held that, under the D.C. long-arm statute, individual defendants are not deemed to have "transact[ed] any business in the District" when "there are no allegations that [the] non-resident defendant's contacts … were for the purpose of transacting business as an individual, but rather were only to perpetuate a corporation's business."[13] *Flocco* v. *State Farm Mutual Automobile Ins. Co.*, 752 A.2d 147, 162-63 (D.C. 2000); *see also Qunito* v. *Legal Times of Washington, Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981) (refusing to extend long-arm jurisdiction over owners and corporate officers whose only contacts with the District of Columbia were on behalf of the corporation); *Security Bank, N.A.* v. *Tauber*, 347 F. Supp. 511 (D.D.C. 1971) (shielding corporate president, who was also a minority stockholder, from personal jurisdiction even though the corporation transacted substantial business in the District of Columbia).

---

[13]    The corporate shield doctrine does not preclude the exercise of personal jurisdiction over a defendant where a corporate defendant lacks sufficient assets to respond to a complaint, where the corporation has filed for bankruptcy, where the corporation and individual are alter egos, or where the individual derives a substantial personal benefit from the business he conducts in the state. *Johns* v. *Rozet*, 770 F. Supp. 11, 18 (D.D.C. 1991). No such circumstances are alleged here.

Simply put, for a court to assert personal jurisdiction over officers or directors of a corporation in their individual capacities, those individuals must have had *personal* contacts with the forum; jurisdiction cannot rest on contacts made solely in their corporate capacities.  Here, Plaintiffs make no allegations of such personal contacts by any of the Individual Defendants.

For the reasons stated above, all claims against the Individual Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## V. The First and Second Claims for Relief Must Be Dismissed Because They Fail to State a *Bivens* Claim.

The First and Second Claims for Relief allege that "at the specific direction of, and acting in concert with, the OCC," Commerce's Directors violated Plaintiffs' "Fifth Amendment Right of Due Process," by deciding to terminate Mr. Hill's employment, to terminate the agreements with InterArch, and to withhold payment on InterArch's invoices.  (Compl. ¶¶ 126-134.)  At its most specific, the Complaint alleges that individual directors and officers of Commerce became federal actors for *Bivens* purposes because they succumbed to alleged OCC "pressure" to terminate Mr. Hill's employment by Commerce, or to breach Commerce's contractual obligations to InterArch and Mrs. Hill, in order to avoid public charges of wrongdoing and delays or disapproval of Commerce's new branch applications.  (*Id.* ¶¶ 9-10, 13.)  According to the Complaint, "[p]ursuant to *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), Commerce's Directors are personally and individually liable" for damages flowing from these alleged due process violations (the "*Bivens* Claims").  (Compl. ¶¶ 130, 134.)

The First and Second Claims for Relief must be dismissed for failure to state a claim. *Bivens* created a narrow cause of action against *federal officials* that exists only where *no alternative remedy* exists that can redress the alleged wrong. Courts have declined to broaden *Bivens* to reach private actors, holding that any such broadening is particularly inappropriate if it threatens to interfere with a well-developed Congressional scheme, such as the national banking system. Even where these requisites are alleged — which they are not in this case — clear allegations about the *federal officials' actions* are necessary to state a *Bivens* claim. Such allegations are missing from the Complaint here.

**A.    As a Judicially Created Right of Action, *Bivens* Liability Has Been, and Must Remain, Confined to Narrow Circumstances Not Alleged Here.**

In *Bivens*, a divided Supreme Court recognized an implied private right of action for damages against federal officers for alleged violations of a plaintiff's Fourth Amendment rights. *Bivens*, 403 U.S. at 397, 91 S. Ct. at 2005 (5-1-3 decision) (Harlan *J.*, concurring; Burger, Black & Blackmun, *JJ.*, dissenting). "Since *Bivens* was decided, the Supreme Court has 'responded cautiously to suggestions that *Bivens* remedies be extended into new contexts.'" *Sudnick* v. *DOD*, 474 F. Supp. 2d 91, 99 (D.D.C. 2007) (quoting *Schweiker* v. *Chilicky*, 487 U.S. 412, 421, 108 S. Ct. 2460, 2467 (1988)) (dismissing *Bivens* claim in light of remedial scheme under the Privacy Act). Indeed, the Court has "consistently refused to extend *Bivens* liability to *any new context or category of defendants.*" *Correctional Services Corp.* v. *Malesko*, 534 U.S. 61, 68, 122 S. Ct. 515, 520 (2001) (emphasis added) (private corporation operating a prison not subject to suit under *Bivens*).

"'In over thirty years of *Bivens* jurisprudence, the Court has extended its holding only twice.'"  *Holly* v. *Scott*, 434 F.3d 287 (4th Cir. 2006) (quoting *Malesko*, 534 U.S. at 70; 122 S. Ct. at 521).  Both cases involved exactly what *Bivens* itself had presented:  claims against public, not private actors, where there was no alternative cause of action or remedy available.  *Davis* v. *Passman*, 442 U.S. 228, 245, 99 S. Ct. 2264, 2277 (1979) (noting that for "Davis, as for Bivens, 'it is damages or nothing'") (quoting *Bivens*, 403 U.S. at 410, 91 S. Ct. at 2011 (Harlan, *J.*, concurring in judgment)); *Carlson* v. *Greene*, 446 U.S. 14, 100 S. Ct. 1468 (1980) (*Bivens* remedy available because Federal Tort Claims Act provided no cause of action against alleged *individual* federal tortfeasor).  As the Supreme Court explained in *Malesko*, "[t]here is no reason for us to consider extending *Bivens* beyond [its] core premise" of "deter[ring] individual federal officers from committing constitutional violations."  *Malesko*, 534 U.S. at 70-71, 122 S. Ct. at 521-22.

The Supreme Court's refusal to go further reflects a broader trend, in which the Court has "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one."  *Malesko*, 534 U.S. at 67 n.3, 122 S. Ct. at 519 n.3 (citing *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188, 114 S. Ct. 1439, 1453-54 (1994); *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U.S. 11, 15-16, 100 S. Ct. 242, 245 (1979); *Cannon* v. *University of Chicago*, 441 U.S. 677, 688, 99 S. Ct. 1946, 1953 (1979); *id.*, 441 U.S. at 717-718, 99 S. Ct. at 1968-1969 (Rehnquist, *J.*, concurring)).  Courts of Appeals therefore regularly decline to extend *Bivens* to a "new context or category of defendants."  *Holly*, 434 F.3d at 297 (no *Bivens* liability for private actors where plaintiffs possessed alternative

remedies); *Hudson Valley Black Press* v. *IRS*, 409 F.3d 106 (2d Cir. 2005) (no *Bivens*

relief in taxation context); *Marsaw* v. *Thompson*, 133 Fed. Appx. 946, 948 (5th Cir.

2005) (no *Bivens* remedy for alleged unconstitutional denial of Medicare

reimbursements); *Libas Ltd.* v. *Carillo*, 329 F.3d 1128, 1131 (9th Cir. 2003) (no *Bivens*

action against Customs agents who improperly assess import duty).

      The *Bivens* Claims here aim solely at a new "category of defendants" —

Commerce's Directors.  This disregards case law holding that a "*Bivens* claim cannot be

brought against a private entity (or individual)."  *Holz* v. *Terre Haute Regional Hosp*, 123

Fed. Appx. 712, 713 (7th Cir. 2004) (dismissing claims) (citing *Malesko*, 534 U.S. at 66,

122 S. Ct. at 519); *see also Holly*, 434 F.3d at 291 (expressing "doubt" any such claim

may be brought).  It also disregards *Bivens*' sole purpose and rationale:  to deter

unconstitutional conduct by federal *officials*.[14]

      An implied right of action under *Bivens* for alleged constitutional

violations arising out of OCC action would be particularly problematic, because it would

threaten harm to the national banking system.  In *Sinclair* v. *Hawke*, 314 F.3d 934 (8th

Cir. 2003), plaintiff bank sued the Comptroller and officers of the OCC, claiming that

their adverse regulatory actions violated the bank's constitutional rights.  *Id*. at 940.  The

---

[14]    In *Holly*, the Fourth Circuit explained:

> [T]he Supreme Court has recently stated that "the purpose of *Bivens* is to
> deter individual *federal* officers from committing constitutional
> violations."  It is unclear how permitting a lawsuit against an individual
> who is *not* a federal officer could serve this purpose.

434 F.3d at 291 (quoting *Malesko*, 534 U.S. at 70, 122 S. Ct. at 521); *see also Godoy-Aguirre* v. *Gilkey*, 2006 WL 2585040, at *5 (E.D. Cal. Sept. 7, 2006) ("Nor would extending *Bivens* deter future unconstitutional conduct by federal officers as the Defendants are employees of a private corporation."), *adopted by*, 2006 WL 3346230 (E.D. Cal. Nov. 16, 2006).

claims could not proceed because "it is for Congress to decide" whether in the "complex regulatory environment" of the national banking system, certain causes of action would harm rather than advance the public interest. *Id.* at 942. In this context, for over two hundred years Congress has regulated extensively, and has created a "comprehensive regulatory regime." *Id.* Actions by the OCC under this comprehensive regulatory regime are reviewable under the Administrative Procedure Act (the "APA"), a Congressional choice that precludes a *Bivens* action. *Id.* at 941. Were the rule otherwise, APA review could be avoided "'simply by fashioning [an] attack on an agency decision as a constitutional tort claim against individual agency officers.'" *Id*. (quoting *Zephyr Aviation, L.L.C.* v. *Dailey*, 247 F.3d 565, 572 (5th Cir. 2001)).

Here, the purported *Bivens* Claims challenge OCC conduct by a route other than that authorized by Congress. Moreover, the *Bivens* Claims challenge OCC action in a court proceeding to which the OCC is not a party and is not afforded a party's rights to participate in the defense of the challenged conduct. The claims also threaten harm to the private entities and individuals Congress has brought under OCC regulation by subjecting directors and officers of national banks who seek to meet OCC regulatory concerns with the threat of *Bivens* litigation for such compliance.

Allowing the *Bivens* Claims to proceed would therefore threaten severe harm to the public's interest in a well-regulated national banking system in which financial institutions cooperate openly with regulators. That system encourages financial institutions to anticipate and address regulatory concerns, including concerns about management. *See generally, e.g.*, Office of the Comptroller of the Currency, The Role of a National Bank Director: The Director's Book  95-96  (Washington, D.C. 1997) (a "key

factor" in the OCC's decision to bring an action against a bank or director is "[t]he board's history of cooperation with the OCC and the apparent willingness of the board to take the appropriate corrective actions"); Office of the Comptroller of the Currency, Policies and Procedures Manual PPM 5310-3: Policy for Taking Corrective Action, § G(1) (1993), Appendix B to Problem Bank Identification, Rehabilitation and Resolution: A Guide for Examiners (2001) ("The severity of the corrective measures utilized [by the OCC] should be based primarily on two factors: the bank's condition and the OCC's assessment as to the degree of cooperation, responsiveness and overall capability displayed by the bank's management and board.").  The system aims to "foster strong relationships with senior management and the boards of directors" of financial institutions.  *See* Division of Banking Supervision and Regulation, Board of Governors of the Federal Reserve System, Bank Holding Company Supervision Manual, Supplement 31, § 3900.0.4.1 (2007).  These systemic aims and the public's interest in their achievement would be severely harmed if alleged cooperation by regulated entities could serve as a basis for implied private rights of action under *Bivens*.

> **B.    The Complaint Fails to Allege That Commerce's Directors Acted Under Color of Federal Law.**

Even if Plaintiffs' *Bivens* Claims alleged facts that could justify asserting such claims against a new "category of defendants" — Commerce's  Directors — they fail to allege facts showing that these private persons acted under color of federal law. Quite the opposite:  Plaintiffs charge that Commerce's Directors acted out of a personal desire to please, or not to displease, federal banking regulators, so that these regulators might act favorably toward the regulated entity.  Plaintiffs name no federal actor or agency as a defendant, nowhere allege that any federal official directly took any allegedly

-28-

unconstitutional action against them, and nowhere allege that any Individual Defendant intended constitutional harm or even invoked "the color of federal law" in carrying out his private functions.

As the D.C. Circuit has stated, before all else, *Bivens* requires clear allegations of government action.  *See Browning* v. *Clinton*, 292 F.3d 235, 250 (D.C. Cir. 2002).  In *Browning*, for example, the court dismissed plaintiff's *Bivens* claims because she did not "allege … facts suggesting that [defendants] purported to act under color of official right," allegations which are "[c]ritical to a successful *Bivens* claim."  *Id*.  As discussed above, courts have ruled that private actors are never appropriate *Bivens* defendants, or at least that there is no reason to imply such liability.  *Holz*, 123 Fed. Appx. at 713; *Holly*, 434 F.3d at 291.

Plaintiffs cannot allege that Commerce Bancorp or Commerce Bank are liable under *Bivens*.[15]  *See Malesko*, 534 U.S. at 74, 122 S. Ct. 515 at 521.  Instead, they attempt to allege that Commerce's Directors, as *individuals*, engaged in federal action. But the Complaint, at most, alleges that the OCC's "coercive power over *Commerce* [was] such that the actions of Commerce's *Directors*" amounted to those "of federal officials acting under color of federal law."  (Compl. ¶ 10 (emphasis added).)  Such coercive action, according to Plaintiffs, consisted of (i) a "letter" from the OCC to Mr. Hill and three named Directors stating that the OCC would not act with respect to "pending branch applications or request for additional investment in Bank premises while certain issues remained unresolved," and (ii) a "'deal'" "whereby Mr. Hill's employment

---

[15]    The OCC does not regulate Commerce Bancorp; it regulates only Commerce Bank, a subsidiary of Commerce Bancorp.

would be terminated." (Compl. ¶¶ 47-48.)  Similarly, Mrs. Hill and InterArch allege

vaguely, "upon information and belief," that the OCC directed Commerce's Directors to

"take[] actions" against Mrs. Hill and to breach "*Commerce's* agreements with

InterArch."  (*Id.* ¶ 12, 95 (emphasis added).)

        Even assuming that these allegations were accurate, they are insufficient

as a matter of law to describe conduct by Commerce's *Directors* as individuals.  Under

New Jersey law, "an officer who causes his corporation to breach a contract for what he

conceives to be the best interest of the corporation does not thereby incur personal

liability."  *Zeiger* v. *Wilf*, 755 A.2d 608, 622 (N.J. Super. Ct. App. Div. 2000) (individual

director not liable for breach of contract because no basis to conclude he did not act in the

interests of the corporation).  *See also Fields* v. *Thomson Printing Co., Inc.*, 363 F.3d

259, 274 (3d Cir. 2004) ("Thus, an [individual defendant] can be held personally liable

only if [plaintiff] alleges that [individual] was not acting with the intent to benefit" the

corporation.").  Were it otherwise, "Corporations would substantially be prevented from

… abandoning disadvantageous but valid contracts, and from securing related business

advice."  *Zeiger*, 755 A.2d at 622 (quoting *Welch* v. *Bancorp Mgmt. Advisors*, 675 P.2d

172, 177 (Ore. 1983)).[16]

---

[16]    The rights and liabilities of directors generally are determined by the law of the state of incorporation, which in the case of Commerce Bancorp is New Jersey.  *See Ono* v. *Itoyama*, 884 F. Supp. 892, 894 (D.N.J. 1995) ("The local law of the state of incorporation will be applied 'to determine the existence and extent of a director's or officer's liability to its shareholders, in the absence of another state with a more significant relationship.'") (quoting *Tabas* v. *Mullane*, 608 F. Supp. 759, 764 (D.N.J. 1985)), *aff'd*, 79 F.3d 1138 (3d Cir. 1996); *Fields*, 363 F.3d at 274 (applying New Jersey common law to find individual defendant not liable for breach of employment contract).  The rights and liabilities of the directors in their capacity as members of the board of Commerce Bank also are determined by state law.  *See Atherton* v. *FDIC*, 519 U.S. 213, 217-18, 117 S. Ct. 666, 670 (1997).

Here, Plaintiffs nowhere allege that any individual director or officer made any alleged decision for a reason other than the perceived best interests of Commerce and its shareholders. Plaintiffs do not plead bad faith, self-dealing or any other action even arguably sufficient to treat any alleged decision as unauthorized or outside the ordinary duties of a director or officer. To the contrary, Plaintiffs plead that Commerce and Commerce's Directors cooperated with the OCC to avoid harm to Commerce. If a *Bivens* claim could be stated whenever it is alleged that a private actor's commercial conduct was influenced by private concern about the government's preferences or policies, then nearly every employment or contract claim against highly regulated entities, including banks, utilities, federal contractors, and others, could be accompanied by a *Bivens* claim against those entities' representatives.[17] As discussed above, this would interfere with Congress's prerogatives to regulate and to choose procedures for review of regulatory actions.

---

[17] While courts sometimes discuss whether a somewhat flexible "state action" analysis derived from cases under 42 U.S.C. § 1983 ("Section 1983") may also apply to *Bivens* claims (*e.g.*, *Reuber* v. *United States*, 750 F.2d 1039, 1055 n.19 (D.C. Cir. 1984)), significant differences between Section 1983 and *Bivens* militate strongly against parallel treatment. As courts have observed, there is "ample reason to be even more cautious about imputing liability to private actors under *Bivens* than under § 1983." *Holly*, 434 F.3d at 292. To begin with, Section 1983 is part of broader civil rights legislation that expressly created liability for various actors, including private actors, while *Bivens* reflects judicial thinking about remedies where Congress has chosen not to act.

Even assuming state action analysis from Section 1983 applies, the analysis would doom the *Bivens* claims here. Commerce's Directors are not alleged to be performing a public function, to be "interdependen[t]" with the OCC, or to have acted in a way that "must in law be deemed to be that of the state." *Abu-Jamal* v. *National Pub. Radio*, 1997 WL 527349, at *5-6 (D.D.C. Aug. 21, 1997), *aff'd*, 159 F.3d 635 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Morast* v. *Lance*, 807 F.2d 926, 931-33 (11th Cir. 1987). Even if these standards could be met, the theoretical *Bivens* claim still would be qualified by theoretical "official immunity." *Richardson* v. *McKnight*, 521 U.S. 399, 413, 117 S. Ct. 2100, 2108 (1997) (explaining that qualified immunity may apply to private individuals, "associated with a government body, serving as an adjunct to government in an essential government activity, or acting under close official supervision").

C.    **Because Plaintiffs Assert Several Alternative Causes of Action, They Cannot Also State a *Bivens* Claim.**

*Bivens* implied a federal cause of action in order to provide a remedy to constitutionally aggrieved plaintiffs who lack any alternative remedies.  *See*, *e.g.*, *Malesko*, 534 U.S. at 72-74, 122 S. Ct. at 522-23 (no *Bivens* remedy where coextensive tort and administrative law remedies were available to the plaintiff); *Holly*, 434 F.3d at 295-297 (no *Bivens* remedy where state law of negligence provided alternative cause of action); *Brown* v. *Pugh*, 2006 WL 2439859, at *2 (S.D. Ga. July 7, 2006) ("there [is] no implied right to a private damages action when alternative causes of action [are] available to a plaintiff").  To bar a *Bivens* claim, a plaintiff's alternative remedy need not be superior, or even equivalent.  *Malesko*, 534 U.S. at 69, 122 S. Ct. 515 at 520.  Instead, "[s]o long as the plaintiff ha[s] an avenue for *some redress*, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability."  *Id.* (emphasis added) (citing *Schweiker*, 487 U.S. at 425-427, 108 S. Ct. at 2468-69).  Or, as the Ninth Circuit explained, "[i]mplied remedies premised on violations of constitutional rights are not created to fill in gaps of existing relief to which plaintiffs are already entitled."  *Libas Ltd.*, 329 F.3d at 1130.

Here, Plaintiffs have attempted to plead no fewer than ten other claims for relief, based on alternative common law theories of breach of contract, *quantum meruit*/unjust enrichment, promissory estoppel, breach of implied covenant of good faith and fair dealing, tortious interference, contractual indemnification, and intentional infliction of emotional distress.  The Complaint's many alternative asserted claims preclude Plaintiffs' *Bivens* Claims.

### VI.    InterArch's Claim for Copyright Infringement Should Be Dismissed for Failure to State a Claim.

In the Complaint's Third Claim for Relief, InterArch asserts a cause of action for infringement of copyrighted material "prepared [by InterArch] in connection with its work for Commerce."  (Compl. ¶ 136; *see id.* ¶¶ 135-44.)  The claim should be dismissed because, as the Master Agreement reveals, InterArch waived any cause of action for infringement of such works.  The Master Agreement reveals on its face that InterArch transferred to Commerce exclusive ownership in the very intellectual property that Commerce is now accused of infringing.  As a matter of logic and law, therefore, InterArch's claim is fatally flawed.  Indeed, it is well settled that a "copyright owner who grants" a license "to use his copyrighted material waives his right to sue the licensee for copyright infringement."  *Graham* v. *James*, 144 F.3d 229, 236 (2d Cir. 1998); *see also* 3 M. Nimmer & D. Nimmer, *Nimmer On Copyright* § 12.02[B] (2007) [hereinafter "Nimmer"] ("Once the copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not his grantor may sue for later-occurring infringements of such rights.").  Here, InterArch did even more than grant a license; it assigned ownership in any of its copyrights entirely to Commerce.  If InterArch has any claim it is for breach of contract, not copyright infringement.[18]

As the Complaint indicates, Article 8(D) of the Master Agreement addresses the issue of who owns any intellectual property arising from InterArch's work for Commerce.  (*See* Compl. ¶ 119 (quoting selectively from Article 8(D) of the Master

---

[18]    In moving to dismiss InterArch's copyright claim on the basis of the Master Agreement, Commerce is not conceding that it lacks other meritorious defenses under copyright law, including the defense that the asserted copyrights are invalid.  Commerce reserves the right to raise such other defenses in the future.

Agreement in addressing the issue).)  The article refers to any intellectual property arising

from InterArch's work by the term "Instruments of Service," which the Master

Agreement defines elsewhere as "[a]ll plans, designs, drawings, specifications, studies

and other instruments of service produced for the Project by or on behalf of [InterArch]

pursuant to this Agreement."  (Compl., Ex. B (Master Agreement), Article 8(A).)  Thus,

what the Complaint identifies as the infringed material, "InterArch's IP" — *i.e.*,

"copyrights in architectural designs, plans, drawings, and specifications, prepared by

InterArch [and] relating to the construction of Commerce buildings" — is fully captured

by "Instruments of Service."  (Compl. ¶ 114.)

       Under the Copyright Act, the "ownership of a copyright may be

transferred in whole or in part by" the original author of the work.  17 U.S.C. § 201(d)(1);

*see id.* § 204(a).  Article 8(D) of the Master Agreement unambiguously transfers

ownership of the Instruments of Service from InterArch to Commerce.  The article

provides:

> All Instruments of Service shall be the *sole property* of
> [Commerce], and [Commerce] is vested with all rights
> therein, whether created by law or in equity; provided that
> [InterArch's] designs, drawings or specifications may not
> be used by [Commerce] for any other project unless
> [Commerce] provides prior notice to [InterArch] and agrees
> to pay a reasonable fee for such use.  . . .

(Compl., Ex. B (Master Agreement), Article 8(D) (emphasis added).)  Article 8(D)

satisfies all the statutory conditions of a "transfer of copyright ownership," which are

simply that there be "an instrument of conveyance" that is "in writing and signed by the

owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C.

§ 204(a).  There can be no dispute that the Master Agreement is in writing and signed by

Mrs. Hill on behalf of InterArch.  (Compl., Ex. B (Master Agreement) at 3.)  Nothing

more is required.  As Judge Kozinski has explained, the required writing "doesn't have to

be the Magna Carta; a one-line pro forma statement will do."  *Effects Assocs. Inc.* v.

*Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

Pursuant to Article 8(D), therefore, Commerce owns the Instruments of

Service exclusively, subject only to a duty to agree with InterArch on a reasonable fee

when Commerce, in its sole discretion, chooses to use the Instruments of Service for

"other project[s]."  InterArch has no right to restrict Commerce's use of the works in any

way; it merely has a right to be paid, in certain circumstances.

While the Complaint alleges that the "Master Agreement does not provide

that Commerce owns any copyrights in InterArch's IP that was produced pursuant to the

Master Agreement" (Compl. ¶ 119), this bare allegation is flatly contradicted by the text

of the Master Agreement itself, which — as noted above — states that any such

copyrights "shall be the sole property of" Commerce.  (Compl., Ex. B (Master

Agreement), Article 8(D).)  Where allegations in a complaint conflict with an exhibit

attached thereto, the exhibit controls.  *See In re U.S. Office Products Co. Securities Litig.*,

251 F. Supp. 2d 58, 71 (D.D.C. 2003) ("[I]f there is a discrepancy between the terms of

an instrument annexed to a pleading and its interpretation in the pleading, the former

must prevail.") (internal quotation marks omitted); *see also Fayetteville Investors* v.

*Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of

conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails.").[19]

        The Complaint's only arguably cognizable allegation with respect to copyrights is that Commerce has used the works for "other project[s]" and failed to pay the "reasonable fee" required by Article 8(D) in that circumstance. (*See* Compl. ¶ 123 (alleging that in connection with Commerce's use of "InterArch's IP," Commerce "is refusing to pay monies due to InterArch"); *id*. ¶ 124.) That allegation gives rise only to a claim for breach of contract, which InterArch already is making as its Fifth Claim for Relief. (*See* Compl., Fifth Claim for Relief, ¶ 162 (alleging that "InterArch retains certain property interests in and contractual rights to the architectural plans it designed for Commerce" and that "Commerce has failed to pay InterArch for its rights in these plans despite being requested to do so").) Because any copyrights are the "sole property" of Commerce (Compl., Ex. B (Master Agreement), Article 8(D)), the claim for contract damages is InterArch's sole remedy. *See*, *e.g.*, *United States Naval Inst.* v. *Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) ("[A]n exclusive licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it."); *Jacob Maxwell, Inc.* v. *Veeck*, 110 F.3d 749, 753 (11th Cir. 1997) ("a promise not to sue for copyright infringement" is "the essence" of a license);

---

[19]     It is of no moment that, as the Complaint alleges, "InterArch's IP is not work made for hire" for Commerce. (Compl. ¶ 120.) That proposition merely means that InterArch, rather than Commerce, is the work's "author," in whom copyright "vests initially." 17 U.S.C. § 201(a); *cf. id*. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . ."). The copyright laws nonetheless gave InterArch the right to transfer ownership of works it authored, and that is what InterArch has done so through Article 8(D) of the Master Agreement. *See* 17 U.S.C. §§ 201(d)(1); *id*. § 204(a).

*see* 3 Nimmer, *supra*, § 12.02[B].  Accordingly, InterArch's claim for copyright infringement should be dismissed.

## CONCLUSION

For the reasons set forth above, this action should be dismissed for improper venue or transferred to the U.S. District Court for the District of New Jersey.  In the event the Court declines to dismiss for improper venue or transfer the action, all of InterArch's claims must be dismissed in view of a binding agreement to arbitrate.  All claims against the Individual Defendants should be dismissed for lack of personal jurisdiction, and the claims arising under *Bivens* and the Copyright Act should be dismissed for failure to state a claim upon which relief can be granted.

Dated:  Washington, D.C.
          March 24, 2008

Respectfully submitted,

                                                    /s/

Penny Shane                           Margaret K. Pfeiffer (D.C. Bar No. 358723)
SULLIVAN & CROMWELL LLP               Joseph J. Reilly (D.C. Bar No. 480824)
125 Broad Street                      SULLIVAN & CROMWELL LLP
New York, New York 10004              1701 Pennsylvania Avenue, N.W.
Tel.:  (212) 558-4000                 Washington, DC  20006-5085
Fax:  (212) 558-3588                  Tel.: (202) 956-7500
                                      Fax:  (202) 956-6330

                                      Warren W. Faulk
                                      William M. Tambussi
                                      BROWN & CONNERY, LLP
                                      360 Haddon Avenue, P.O. Box 539
                                      Westmont, New Jersey 08108
                                      Tel.: (856) 854-8900
                                      Fax: (856) 858-4967

*Attorneys for Certain Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| VERNON W. HILL, II, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.  08-cv-59 (RBW) |
| ) | |
| DENNIS M. DIFLORIO, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**[PROPOSED] ORDER**

Upon consideration of Certain Defendants' Motion to Dismiss or Transfer Venue,

it is hereby, on this _____ day of _____, _____,

**ORDERED** that this action be, and it hereby is, **DISMISSED** for improper venue

pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

**SO ORDERED.**

_____
REGGIE B. WALTON
United States District Judge