# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VERNON W. HILL, II, *et al.*,                )
                                             )
      Plaintiffs,                     )
                                             )
vs.                                          )  Civil Action No. 1:08-cv-00059 (RBW)
                                             )
DENNIS M. DIFLORIO, *et al.*,                )
                                             )
      Defendants.                     )

## PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANTS TO DISMISS OR TRANSFER VENUE

Andrew L. Sandler (D.C. Bar No. 387825)
Edward J. Meehan (D.C. Bar No. 413993)
Joseph L. Barloon (D.C. Bar No. 459626)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for Plaintiff Vernon W. Hill, II


F. Joseph Warin (D.C. Bar No. 235978)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 995-8500

Counsel for Plaintiffs Shirley Hill and
InterArch, Inc.

May 23, 2008

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................6

I.   DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
     SHOULD BE DENIED .............................................................................................6

     A.   There is a Liberal Pleading Standard at This Stage of the Proceedings ...............6

     B.   The Complaint States a *Bivens* Claim ................................................................7

          1.   Case Law and Sound Policy Reasons Support Recognizing a *Bivens*
               Claim Against Private Individuals ..............................................................7

          2.   The APA is Not an Alternative Remedy to a *Bivens* Claim in This Case....12

          3.   The Complaint Alleges That the Individual Defendants Acted Under
               Color of the Law .....................................................................................12

          4.   Plaintiffs' Contract and Tort Claims Are Not Alternative Remedies to
               a *Bivens* Claim in This Case......................................................................14

     C.   InterArch's Contractual Claims Are Not Subject to an Arbitration Clause.........16

     D.   InterArch Did Not Assign its Rights in the Copyrights That Commerce Has
          Infringed ...............................................................................................................20

II.  DEFENDANTS' MOTION TO DISMISS OR TRANSFER BASED ON
     IMPROPER VENUE SHOULD BE DENIED............................................................22

     A.   Venue is Proper in This District .........................................................................22

     B.   Defendants Have Not Met Their Heavy Burden to Upset
          Plaintiffs' Choice of Venue.................................................................................25

          1.   The Convenience Factors Favor Litigating in the District of Columbia......26

          2.   Only Three of the Thirteen Claims in the Complaint Implicate a
               Forum-Selection Clause .............................................................................28

          3.   The Court Should Exercise its Discretion Not to Transfer the Forum-
               Selected Claims in This Case .....................................................................31

i

III.  THIS COURT POSSESSES SPECIFIC PERSONAL JURISDICTION OVER
THE INDIVIDUAL DEFENDANTS.........................................................................33

CONCLUSION.................................................................................................................37

CERTIFICATE OF SERVICE ........................................................................................38

# TABLE OF AUTHORITIES

## CASES

*Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.,*
No. 07-7105, 2008 WL 1932768 (Apr. 29, 2008) ...................................7

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) ......................................7

** *Bender v. General Services Administration,*
539 F. Supp. 2d 702 (S.D.N.Y. 2008)...............................................8, 9, 13, 15, 16

** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
403 U.S. 388 (1971)............................................................................ *passim*

*Boyd v. Grand Trunk W.R. Co.,* 338 U.S. 263 (1949) .......................................32

*Bush v. Lucas,* 462 U.S. 367 (1983) ..............................................................10

*Chappell v. Wallace,* 462 U.S. 296 (1983) .....................................................10

** *Chase v. Pan-Pacific Broadcasting, Inc.,* 617 F. Supp. 1414 (D.D.C. 1985) .............35, 36

*Commerce Bancorp, Inc. v. InterArch, et al.,*
No. L296-08 (N.J. Sup. Ct., Camden County filed Jan. 14, 2008)........................4

*Community for Creative Non-Violence v. Reid,* 846 F.2d 1485 (D.C. Cir. 1988).............21

*Correctional Services Corp. v. Malesko,* 534 U.S. 61 (2001) ...........................10

*Davis v. Metro Productions, Inc.,* 885 F.2d 515 (9th Cir. 1989)......................35

*Design Options, Inc. v. BellePointe, Inc.,* 940 F. Supp. 86 (S.D.N.Y. 1996)...................21

*Downey v. The Coalition Against Rape and Abuse, Inc.,*
143 F. Supp. 2d 423 (D.N.J. 2001) ...................................................29

*El-Fadl v. Central Bank of Jordan,* 75 F.3d 668 (D.C. Cir. 1996)....................34

*Erickson v. Pardus,* 127 S. Ct. 2197 (2007) .................................................6, 7

*Gabel v. Manetto,* 427 A.2d 71, 177 N.J. Super. 460 (N.J. Super. Ct. App. Div. 1981)...19

*Gonzales v. Internacional de Elevadores,* 891 A.2d 227 (D.C. 2006) ............................35

*Greene v. McElroy,* 360 U.S. 474 (1959) ......................................................29

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006)................................................................10, 11

*Holz v. Terre Haute Regional Hospital*, 123 Fed. Appx. 712 (7th Cir. 2004)...................11

*Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738 (1976) ..................34, 35

*In Re New Seabury Co. Limited Partnership*, 450 F.3d 24 (1st Cir. 2006) .......................19

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) .................................................9

*Johns v. Rozet*, 770 F. Supp. 11 (D.D.C. 1991).................................................................36

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).....................................................35

*Lucas v. Hill, et al.*, No. 07-cv-0349 (RBK)
    (D.N.J. final judgment entered May 9, 2008).........................................................27

*MacLean Assocs., Inc. v. Wm. M. Mercer-Heidinger-Hansen, Inc.*,
    952 F.2d 769 (3d Cir. 1991)....................................................................................22

*Marra v. Papandreou*, 216 F.3d 1119 (D.C. Cir. 2000).....................................................24

*Mathis v. Geo Group, Inc.*, 535 F. Supp. 2d 83 (D.D.C. 2008).........................................26

\*\*   *McCauley v. Computer Aid Inc.*, 447 F. Supp. 2d 469 (E.D. Pa. 2006)....................7, 8, 13

\*\*   *McNeill v. Zoref*, 687 A.2d 1052, 297 N.J. Super. 213
    (N.J. Super. App. Div. 1997)...........................................................................29, 32

*Montgomery v. STG International, Inc.*, 532 F. Supp. 2d 29 (D.D.C. 2008) ...................25

*National Association of Home Builders v. U.S. Army Corps of Engineers*,
    417 F.3d 1272 (D.C. Cir. 2005)..............................................................................12

*New York Shipping Association v. Federal Maritime Commission*,
    854 F.2d 1338 (D.C. Cir. 1988)..............................................................................33

*Pittsburgh Terminal Corp. v. Mid-Allegheny Corp.*, 831 F.2d 522 (4th Cir. 1987)..........35

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d Cir. 1973) ..............................................27

*Plumbers & Steamfitters v. Vertex Const.*, 932 F.2d 1443 (11th Cir. 1991) ....................19

*Salovaara v. Jackson National Life Insurance Co.*, 246 F.3d 289 (3d Cir. 2001).............24

iv

*Sarro v. Cornell Corrections, Inc.*, 248 F. Supp. 2d 52 (D.R.I. 2003) ................................9

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ................................................................7

*Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000)................................35

*Shugrue v. Continental Airlines*, 977 F. Supp. 280 (S.D.N.Y. 1997)..............................21

** *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)..........................24, 26, 31

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)..................................................32

*United States v. Price*, 383 U.S. 787 (1966) .................................................................9

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ................................................................26

*Worldwide Network Services, LLC, v. Dynacorp Int'l,*
    496 F. Supp. 2d 59 (D.D.C. 2007) .......................................................................26

## STATUTES AND RULES

5 U.S.C. § 704................................................................................................12

12 U.S.C. § 1818.....................................................................................3, 12, 29

17 U.S.C. § 202.............................................................................................21

28 U.S.C. § 1391...........................................................................................23

28 U.S.C. § 1404.......................................................................... 24-26, 31, 32

28 U.S.C. § 1406.............................................................................................24

42 U.S.C. § 1983..............................................................................................9

D.C. Code § 13-423 ........................................................................................34

Fed. R. Civ. P. 12...........................................................................................6, 7

Fed. R. Civ. P. 32...........................................................................................27

Fed. R. Civ. P. 45...........................................................................................28

## SECONDARY SOURCES

5 B Wright & Miller Federal Practice and Procedure: Civil 3d §1357 (2004)..................12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VERNON W. HILL, II, *et al.*,                    )
                                                 )
              Plaintiffs,                        )
                                                 )
vs.                                              )    Civil Action No. 1:08-cv-00059 (RBW)
                                                 )
DENNIS M. DIFLORIO, *et al.*,                    )
                                                 )
              Defendants.                        )

## PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANTS
## TO DISMISS OR TRANSFER VENUE

Plaintiffs Vernon W. Hill, Shirley Hill, and InterArch, Inc. submit this brief in

opposition to the Motion of Defendants to Dismiss or Transfer Venue.

### INTRODUCTION

Plaintiffs ask this Court to deny Defendants' Motion to Dismiss or Transfer

Venue. Months after terminating the employment of Plaintiff Vernon Hill ("Mr. Hill") without

cause and refusing to pay Plaintiff InterArch, Inc. ("InterArch") for services that InterArch

performed, Defendants Commerce Bancorp, Inc. and Commerce Bank, N.A. (collectively

"Commerce") have still not lived up to their acknowledged obligations. Additionally,

Commerce's directors have acted under color of federal law and as proxies for banking

regulators intent upon depriving Plaintiffs of due process. Plaintiffs were forced to file this

lawsuit to seek redress for these wrongs. Relying on superseded contract provisions, Defendants

seek to transfer or dismiss this case based on a forum-selection clause that applies to only a small

fraction of the claims and parties, and thus deprive Plaintiffs of their chance to obtain live trial

testimony from government officials directly involved in the conduct at issue. Also, the director

Defendants invoke discredited and unsupported theories to argue that this Court is precluded

1

from exercising jurisdiction over them and that as private individuals they cannot be held liable for their constitutional wrongs. Courts have rejected these arguments, and this Court should let this case go forward in this district, where the conspiracy at the center of the Complaint was hatched.

Mr. Hill founded Commerce Bancorp, Inc. in 1973 and built it from a single bank branch to one of the largest and most successful regional banks in the United States and the largest bank holding company headquartered in New Jersey. (Compl., ¶ 2.) Mr. Hill served as the President, Chief Executive Officer, and Chairman of Commerce Bancorp and Commerce Bank until his ouster in the summer of 2007. (Compl., ¶ 32.) Mr. Hill had an employment contract dated January 1, 2006, with Commerce Bancorp (the "Employment Agreement," Compl., Ex. A) that provided for him to be compensated in the event that he was terminated without cause.

In 1973, Plaintiff Shirley Hill ("Mrs. Hill") founded InterArch, an architecture and design firm, which played a pivotal role in Commerce's success by creating and implementing the distinctive Commerce branch style. (Compl., ¶ 4.) In 2002, InterArch and Commerce executed an Agency Agreement (the "2002 Agency Agreement," Compl., Ex. C) that addressed certain aspects of the relationship between the two parties. In 2006, InterArch and Commerce entered into a Master Agreement (the "2006 Master Agreement," Compl., Ex. B), which superseded the 2002 Agency Agreement.

Over the years, as Commerce grew and opened more branches, it participated in certain real-estate transactions with entities in which Mr. Hill had an interest. (Compl., ¶ 3.) Likewise, as part of its successful branding effort, Commerce and InterArch engaged in a number of transactions relating to Commerce's branches and other premises. (Compl., ¶ 4.)

2

Regulatory guidelines recognize that transactions such as these between a bank and bank "insiders can address legitimate banking needs and serve the interests of both parties." (Compl., ¶ 5.) The transactions involving Commerce and entities in which Mr. or Mrs. Hill had an interest were disclosed to and examined by Commerce's regulators—the Federal Reserve and the Office of the Comptroller of the Currency ("OCC"). (Compl., ¶¶ 6, 7.) The Federal Reserve and the OCC generally found that these transactions complied with regulations and guidance, did not provide cost disadvantages to Commerce (and in some cases resulted in cost advantages to Commerce), were made at predominantly market rates, and were consistent with arms-length guidelines. (Compl., ¶ 6.) Moreover, Commerce itself has never asserted that these transactions harmed Commerce. (Compl., ¶ 7.)

In late 2006, in a sudden break with its past conduct, the OCC endeavored to oust Mr. Hill from Commerce, based on unsubstantiated allegations that certain transactions with entities in which Mr. Hill had an interest were contrary to Commerce's interest. (Compl., ¶ 8.) Despite the absence of any regulatory or legal findings that Mr. Hill had acted improperly, as well as the fact that the OCC had previously examined the transactions at issue, the OCC pressured Commerce to terminate its relationship with Mr. Hill. (Compl., ¶ 8, 9.) Specifically, although 12 U.S.C. § 1818(e) provides the sole means by which the OCC can remove a bank officer or director, the OCC effected Mr. Hill's removal by threatening to withhold approval of branch applications and make public certain negative findings if Commerce did not terminate Mr. Hill. (Compl., ¶¶ 9, 129.)

In effect, the OCC gave Commerce two options: (i) remove Mr. Hill; or (ii) be deprived of the opportunity to open new branches and face ongoing regulatory action that would cripple Commerce. (Compl., ¶ 52.) The OCC and Defendants then reached a "deal" whereby

3

Mr. Hill's employment with Commerce would be terminated and the OCC would not issue

negative public findings and would approve Commerce branch applications. (Compl., ¶ 48.) On

June 28, 2007, at the direction of the OCC, the members of the Commerce Board of Directors—

who are Defendants in this action—ratified a resolution terminating Mr. Hill "Without Cause."

(Compl., ¶ 48.) Since that time, Commerce has acknowledged in public filings that it owes

money to Mr. Hill under his employment contract, but it has failed to make those payments, out

of fear that such payment would antagonize the banking regulators. (Compl., ¶ 11.)

Defendants have also taken actions against Mrs. Hill and InterArch at the behest

of the OCC, such as refusing to pay invoices and imposing a unilateral 10% cut in InterArch's

fees. (Compl., ¶ 12.) In fact, Commerce has acknowledged in public litigation that it is

contractually obligated to pay InterArch over $1.6 million for services performed by InterArch,

but that it has not made such payment.[1] Commerce has also attempted to destroy InterArch's

business by stealing InterArch's key employees and infringing its copyrights. (Compl., ¶¶ 15,

16.)

Plaintiffs have been forced to file this lawsuit in order to recover sums rightfully

owed to them by Defendants. Plaintiffs also seek damages against Commerce's directors for

violations of Plaintiffs' constitutional rights, pursuant to *Bivens v. Six Unknown Named Agents of

Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for conduct that Commerce's directors

undertook in concert with the OCC and thus under color of federal law. (Compl., ¶¶ 10, 94, 127-

134.)

---

[1]   *See* Complaint, ¶ 43, in *Commerce Bancorp, Inc. v. InterArch, et al.*, No. L296-08 (N.J. Sup.
Ct., Camden County filed Jan. 14, 2008).

Defendants have moved to dismiss all claims for failure to state a claim, except for Mr. Hill's state law claims. Defendants argue that: (i) a *Bivens* claim will not lie against private individual defendants as a matter of law, and in any event a *Bivens* claim should not be recognized in this case; (ii) the claims by Mrs. Hill and InterArch are subject to a binding arbitration clause; and (iii) InterArch assigned its copyrights to Commerce and thus cannot sue Commerce for infringement. Defendants are incorrect on each point. Courts have determined that private individuals can be subject to a *Bivens* claim when they act under color of federal law, and sound policy reasons support recognizing *Bivens* liability in this case. The contract under which Mrs. Hill's and InterArch's claims are brought does not contain or incorporate any arbitration clause, and thus InterArch is free to assert its claims in a court of competent jurisdiction. With respect to the copyright claim, a straightforward reading of the 2006 InterArch Agreement demonstrates that InterArch did not assign any copyrights to Commerce (although InterArch did assign the rights to certain *documents* embodying its intellectual property to Commerce), and thus InterArch is free to pursue an infringement claim against Commerce.

Defendants have also moved to dismiss Plaintiffs' claims for lack of venue, or, in the alternative, to transfer the claims to New Jersey. With respect to venue, Defendants' core arguments are: (i) the convenience of the witnesses and parties requires transfer of this action to New Jersey; and (ii) the exclusive venue for this action is New Jersey due to forum-selection clauses in Plaintiffs' contracts. Defendants' objection to litigating in this district before this Court rings hollow because it was Defendants' secret deal-making with the OCC in this district that brought about the need for this litigation. In any event, Defendants' arguments do not withstand scrutiny. The District of Columbia is a proper venue for this lawsuit because the contacts with the OCC giving rise to the various claims occurred in this district. Also,

convenience of the parties, especially with respect to the ability to obtain live testimony from key witnesses at trial, compels the conclusion that Plaintiffs' claims should not be transferred to New Jersey. With respect to the forum-selection clauses, only three of the thirteen claims in the Complaint—relating to only one Plaintiff and one Defendant—implicate a forum-selection clause, and thus this Court should exercise its discretion not to enforce the applicable forum-selection clause. To do so would result in piecemeal litigation in multiple courts.

Finally, Defendants argue that this Court does not have personal jurisdiction over the individual Defendants. This argument should be rejected. This Court possesses specific personal jurisdiction over the individual director Defendants because they transacted business in the District of Columbia that gave rise to the *Bivens* claims in this case. Moreover, any inability to allege with greater specificity the individual Defendants' contacts with the District of Columbia is the direct result of Defendants' improper exclusion of Mr. Hill from meetings between Commerce and the OCC. (Compl., ¶ 51.) Accordingly, this Court should not dismiss the claims against the individual Defendants for lack of personal jurisdiction without permitting jurisdictional discovery.

**ARGUMENT**

**I.   DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED**

    **A.   There is a Liberal Pleading Standard at This Stage of the Proceedings**

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted). Further, when ruling on a defendant's motion to dismiss, a

6

judge must accept as true all of the factual allegations contained in the complaint. *Id.* A motion

to dismiss under Rule 12(b)(6), therefore, tests not whether the plaintiff will prevail on the merits,

but instead whether the plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974). Moreover, when deciding a motion to dismiss, the court must "constru[e] the

complaint liberally in the plaintiff's favor . . . with the benefit of all reasonable inferences

derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, No.

07-7105, 2008 WL 1932768, at *4 (D.C. Cir. Apr. 29, 2008) (internal quotation marks omitted).[2]

### B.    The Complaint States a *Bivens* Claim

#### 1.    *Case Law and Sound Policy Reasons Support Recognizing a Bivens Claim Against Private Individuals*

Defendants contend that existing precedent forecloses a plaintiff from pursuing a

*Bivens* claim against a private individual acting under color of federal law. Notably, Defendants

fail to cite any precedential authority holding that a *Bivens* action cannot be brought against a

private individual acting as an agent of the federal government. Nor are Plaintiffs aware of any

such authority. Case law and public policy support the position that a *Bivens* claim can be

brought against private individuals who, like the individual director Defendants here, act under

color of federal law.

Several courts have held or indicated that a *Bivens* claim can be brought against a

private individual when that individual is acting under color of federal law. In *McCauley v.*

*Computer Aid Inc.*, 447 F. Supp. 2d 469 (E.D. Pa. 2006), *aff'd per curiam on other grounds*, No.

---

[2]    The Circuit Court in *Aktieselskabet* concluded that the Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) "leaves [these] long-standing fundamentals of notice pleading intact." 2008 WL 1932768, at *4.

06-4089, 2007 WL 1830872 (3d Cir. June 27, 2007), the plaintiff sued his former employer, a corporation, and its officers alleging that he was wrongfully terminated based on his failure to provide his social security number to the employer, in violation of his due process rights and in breach of his employment agreement. *Id.* at 470. The plaintiff asserted his *Bivens* claim under the theory that the defendants were acting under color of federal law because the defendants contended that disclosure of the plaintiff's social security number was required by federal law. *Id.* at 473-74. The *McCauley* court analyzed plaintiff's color-of-federal-law argument under several different tests, including the "close nexus" test. Under that test, a private individual is deemed to be acting under color of federal law for purposes of *Bivens* liability if the federal government "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the Government." *Id.* at 474 (internal quotations and citations omitted). The court concluded that the plaintiff was unable to satisfy the "close nexus" test because the desire to comply with a generally applicable federal law, without more, is insufficient to establish that the defendants were federal actors for purposes of a *Bivens* claim. *Id.*

Recently, in *Bender v. General Services Administration*, 539 F. Supp. 2d 702, 712 (S.D.N.Y. 2008), the United States District Court for the Southern District of New York held that "a *Bivens* action may lie against a private individual defendant acting under color of federal law." In *Bender*, the plaintiff raised a *Bivens* claim against an individual private security guard and that guard's employer, who were working under contract with the Social Security Administration, for use of excessive force in violation of the Fourth Amendment. *Id.* at 704, 706. The defendants moved to dismiss for failure to state a claim on the grounds that a *Bivens* action cannot be maintained against private individuals or entities. *Id.* at 706. The court dismissed the

8

claim against the employer but denied the guard's motion to dismiss, holding that the plaintiff, by alleging that the guard was "acting at the direction and for the benefit" of the Social Security Administration, had adequately pled that the guard was acting under color of federal law for purposes of a *Bivens* claim. *Id.* at 712. The court held that "defendants, although they are not federal officials or entities, have acted under color of federal law if they have . . . jointly acted with the federal government or its agents." *Id.* at 708. Drawing on case law addressing claims arising under 42 U.S.C. § 1983, the court stated that "it is enough" to establish conduct under color of federal law for purposes of *Bivens* if the private actor "is a willful participant in joint activity with the State or its agents." *Id.* at 707 (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)).

Also, in another private contractor case, *Sarro v. Cornell Corrections, Inc.,* 248 F. Supp. 2d 52, 59-61 (D.R.I. 2003), the court recognized a *Bivens* claim against private employees of a company that housed federal prisoners pursuant to a contract with the United States.

In a non-*Bivens* case, the Supreme Court held that a private utility company can be considered a state actor if "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). The *Jackson* case was brought under the Civil Rights Act, rather than *Bivens*, and it dealt with an entity defendant, rather than an individual defendant. Nonetheless, *Jackson* demonstrates that a private actor can be held liable as a governmental actor when it acts under color of law, as the Complaint alleges here.

There are also clear public policy reasons to support recognizing *Bivens* liability against private individuals, especially where the allegation is that government officials used

9

private individuals as proxies to violate the constitutional rights of others. Recognizing a *Bivens* cause of action here would serve public policy by deterring individuals in positions of influence (*e.g.*, bank directors) from conspiring with regulators to knowingly and intentionally deprive individuals of their constitutional rights. Refusing to recognize *Bivens* liability in this case would facilitate government officials seeking to violate their public trust and the rights of others through private proxies, who would be insulated from the remedies that would ordinarily lie against a federal actor. Moreover, the "special factors counseling hesitation" that the Supreme Court has invoked previously to deny *Bivens* liability in other cases are not present in this case. For example, recognizing *Bivens* liability in this case would not interfere with federal fiscal policy, civil service regulations, or the special nature of the military or other governmental programs or policies. *See Bush v. Lucas*, 462 U.S. 367, 379-80, 389 (1983); *Chappell v. Wallace*, 462 U.S. 296, 303-05 (1983).

Defendants argue that *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), supports their position that a *Bivens* action cannot be brought against a private individual. This reliance is misplaced. In *Malesko*, a *Bivens* claim was brought against a private corporation operating a halfway house under contract with the federal Bureau of Prisons. The Supreme Court held that a *Bivens* claim does not exist against private *entities* because "[t]he purpose of *Bivens* is to deter individual federal officers." *Id.* at 70. The Supreme Court, however, explicitly declined to decide whether a *Bivens* action might lie against a private *individual*, stating that "the question whether a *Bivens* action might lie against a private individual is not presented here." *Id.* at 65.

Defendants' reliance on *Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006), is similarly misplaced. In *Holly*, the Fourth Circuit declined to extend potential *Bivens* liability to individual

employees of a privately-operated prison because the activities of each individual defendant did

not rise to the level of acting under color of federal law and the plaintiff had alternative state

remedies. Although the Fourth Circuit stated in dicta that there was "ample reason" to be

"cautious" about recognizing a *Bivens* claim against a private individual, *id.* at 291-92, 294 n.4,

its decision was not based on this reasoning. *Id.* at 292, 296-97.

Defendants also rely on a nonprecedential disposition in the Seventh Circuit that

states: "A *Bivens* claim cannot be brought against a private entity (or individual), even if it is a

federal contractor." (Certain Defendants' Memorandum of Points and Authorities in Support of

Their Motion to Dismiss or Transfer Venue ("Defs. Mot. Dis."), 26 (citing *Holz v. Terre Haute*

*Reg'l Hosp.*, 123 Fed. Appx. 712, 713 (7th Cir. 2004).) Setting aside the nonprecedential nature

of this opinion, Defendants overlook the fact that, apparently, the plaintiff in *Holz* did not

contend that the private individual defendant in that case was acting at the direction of or in close

nexus with government officials, as the Complaint alleges in this case. (Compl., ¶¶ 54, 94, 127-

29, 132-33.)

Defendants also argue that there are policy reasons counseling against recognizing

*Bivens* liability for private bank directors. Defendants argue that recognizing a *Bivens* claim

would deter directors from making necessary management decisions and from offering

"cooperation" with regulators. (Defs. Mot. Dis., 28.) This argument overstates matters.

Recognizing a *Bivens* claim in this context would not discourage lawful management decisions

or cooperation with government officials. Instead, it would discourage only the type of conduct

alleged in the Complaint—*to wit*, willful, unlawful conspiracies with regulators. Defendants are,

in essence, asking this Court to make new law that would provide private individuals with a

blanket exemption from liability for unlawful and willful conspiracies with government

regulators. Refusing to recognize *Bivens* liability against private individuals in this context would provide federal officials and private individuals alike a safe harbor for unlawful and conspiratorial conduct.

In sum, case law and sound policy supports recognizing a *Bivens* action against private individuals. Moreover, to the extent that the law is unsettled with respect to the viability of a *Bivens* claim against private individuals, the Court "should be especially reluctant to dismiss on the basis of the pleadings" because "new legal theories [should] be explored and assayed in the light of actual facts rather than a pleader's suppositions." 5 B Wright & Miller Federal Practice and Procedure: Civil 3d §1357 at 691-92 (2004). At a minimum, there are fact issues remaining as to whether the individual director Defendants' actions were in such a close nexus with government officials that the directors could be deemed to have been acting under color of law. Accordingly, the Court should deny Defendants' motion to dismiss the *Bivens* claims.

### 2. *The APA is Not an Alternative Remedy to a Bivens Claim in This Case*

Defendants contend that this Court should dismiss Plaintiffs' *Bivens* claims because actions by the OCC are reviewable under the Administrative Procedures Act ("APA") and the existence of such an alternative remedy precludes a *Bivens* action. APA review, however, is limited to final agency actions. *See* 5 U.S.C. § 704; *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs.*, 417 F.3d 1272, 1278 (D.C. Cir. 2005). Here, there is no final agency action because the individual director Defendants, acting as government agents and under color of law, enabled the OCC to circumvent official regulatory action, such as the removal and suspension procedures set forth in 12 U.S.C. § 1818(e). (Compl., ¶ 129.) Indeed, it is this lack of official agency action that is at the core of Plaintiffs' *Bivens* claims. Had the OCC proceeded according to its regulations and taken agency action, Plaintiffs would have been entitled to the procedural protections that they allege were denied to them. Moreover, Defendants' argument

12

that there has been official agency action that can be reviewed pursuant to the APA is contradicted by Defendants' assertion that Plaintiffs "nowhere alleged that any federal officer directly took any allegedly unconstitutional action against them . . . ." (Defs. Mot. Dis., 28-29.) In summary, the conduct underlying Plaintiffs' *Bivens* claims cannot be remedied by APA review, and thus, the Court should deny Defendants' motion to dismiss the *Bivens* claims.

### 3.    *The Complaint Alleges That the Individual Defendants Acted Under Color of Law*

Defendants assert that the Complaint does not allege that the individual director Defendants acted under color of federal law. (Defs. Mot. Dis., 28-29.) This is incorrect. The Complaint clearly does allege that the individual director Defendants acted under color of federal law. (Compl., ¶¶ 1 (alleging that the director Defendants acted "under color of federal law"), 54 (same), 94 (same).) For example, the Complaint specifically alleges that the directors acted at the "direction of the OCC" and reached a "deal" with the OCC that Mr. Hill would be terminated. (Compl., ¶ 48.) Moreover, the Complaint alleges that the director Defendants would not have terminated Mr. Hill but for the OCC's insistence. (Compl., ¶ 55.) Under *McCauley*'s "close nexus" test, *see* 447 F. Supp. 2d at 474, or the "joint activity" standard articulated in *Bender*, *see* 539 F. Supp. 2d at 707, Plaintiffs have alleged adequately that the individual director Defendants were acting under color of law and violated Plaintiffs' constitutional rights. *See* 447 F. Supp. 2d at 474.

Defendants argue that the allegations in the Complaint inadequately describe conduct undertaken by the different directors, and thus the *Bivens* claims should be dismissed. At this stage of the proceedings, however, the allegations in the Complaint are more than adequate to survive a motion to dismiss. For example, the Complaint alleges that the directors collectively ratified a resolution terminating Mr. Hill's employment (which, obviously, could not

13

have been done individually by any particular director). (Compl., ¶ 48.)  The Complaint

identifies certain director Defendants as recipients of correspondence from the OCC, (Compl., ¶

47), alleges that one director was involved in the hiring of InterArch employees, (Compl., ¶ 101),

and alleges that certain directors benefited personally from the TD acquisition of Commerce—

which came about as a result of the individual Directors' collusion with the OCC to force Mr.

Hill out of Commerce.  (Compl., ¶ 56).  Moreover, given that the director Defendants had the

authority to direct the conduct of Commerce, additional facts may be identified during the

discovery process that provide detail as to the extent to which the specific directors authorized

and directed each of the actions that violated Plaintiffs' constitutional rights, such as terminating

Mr. Hill's employment and withholding payment from InterArch.  Finally, the inability of

Plaintiffs to make more specific factual allegations against the individual director Defendants is

attributable in part to Defendants' improper exclusion of Mr. Hill from certain meetings

regarding this matter.  (Compl., ¶ 51.)  At the very least, Plaintiffs are entitled to discovery with

respect to the role that each individual director Defendant played in the actions taken against

Plaintiffs.

> **4.      *Plaintiffs' Contract and Tort Claims Are Not Alternative Remedies to a
> Bivens Claim in This Case***

Defendants err in characterizing Plaintiffs' contract and tort claims as  alternative

remedies that would preclude their *Bivens* claims.  Contrary to Defendants' assertions, the

injuries underlying Plaintiffs' *Bivens* claims are distinct from the injuries underlying their other

claims.

For instance, as discussed above, Mr. Hill's *Bivens* claim seeks redress for (i) the

violation of his constitutionally-protected property right to continued employment without

governmental interference, and (ii) the violation of his due process right to certain procedural

14

safeguards that would have applied had the government invoked the proper statutory procedure

for ousting Mr. Hill from Commerce. (Compl., ¶¶ 128, 129.) Plaintiffs' other claims are not

adequate alternative remedies because they address conduct committed by other Defendants and

because they address distinct harms inflicted upon Plaintiffs. For example, Mr. Hill's contract-

related claims seek damages for Commerce's failure to abide by its obligations in his

Employment Agreement, or negotiate in good faith and deal fairly with Mr. Hill regarding those

obligations, once it terminated Mr. Hill's employment. (Compl., ¶¶ 145-54, 176-80, 191-96).

Likewise, Plaintiffs' intentional infliction of emotional distress claim relates to their interest in

emotional well-being, (Compl., ¶¶ 204-07), which is distinct from their constitutionally-

protected interest in due process and property.

      Significantly, even if Commerce had honored every contractual obligation

triggered by Mr. Hill's termination without cause, the manner in which the OCC and Defendants

ousted Mr. Hill would still give rise to a constitutional claim. Thus, the injuries that Mr. Hill's

*Bivens* claim seeks to redress are distinct from the injuries underlying his state law claims.

      Recent case law affirms that the availability of related tort or contract claims will

not preclude relief under *Bivens*, because constitutional claims are a "different harm." As

explained above, in *Bender v. General Services Administration*, 539 F. Supp. 2d 702 (S.D.N.Y.

2008), the court denied a motion to dismiss a *Bivens* claim against a private individual alleged to

have violated the plaintiff's Fourth Amendment rights. The court noted that the existence of

related state law tort remedies that the plaintiff may have against the defendant does not preclude

a *Bivens* claim against the same defendant because "a violation of one's Fourth Amendment

rights causes a different harm than the commission of a state law tort, and thus is the basis of a

different cause of action." *Id.* at 710. Accordingly, the court concluded "[h]aving colorable

15

claims for state law torts does not preclude claims for constitutional torts, any more than having colorable claims for battery would preclude claims for assault." *Id.*

Mr. Hill's state law claims are not adequate alternatives to a *Bivens* claim; those claims seek redress for a "different harm." *Id.* Likewise, Mrs. Hill's and InterArch's *Bivens* claim seeks redress for violations of their constitutionally-protected property and due process rights, which are distinct from the copyright and contractual rights underlying their other claims.

### C.    InterArch's Contractual Claims Are Not Subject to an Arbitration Clause

Defendants argue that InterArch's claims should be dismissed because they are "subject to binding arbitration pursuant to the [2002] Agency Agreement." (Defs. Mot. Dis., 17.) However, Defendants completely ignore—and fail to even mention—the 2006 Master Agreement, which, in fact, governs InterArch's claims. The 2006 Master Agreement supersedes the 2002 Agency Agreement, and the 2006 Master Agreement does not contain, or even allude to, an arbitration provision.

Defendants correctly note that InterArch and Commerce executed the 2002 Agency Agreement on January 15, 2002 "to memorialize certain terms and conditions by which their relationship ha[d] been governed and by which they desire[d] their relationship to continue to be governed." (Compl., Ex. C.) That agreement outlined the types of services that InterArch could provide for Commerce, including, among other things, project administration and management services, design services, construction procurement services, and other procurement services. (Compl., Ex. C.) Moreover, the 2002 Agency Agreement detailed the basic principles underlying the parties' relationship, including indemnification, assignment, agency, and how the parties' could terminate their relationship. (Compl., Ex. C.) As Defendants stress, that agreement also contained an arbitration provision. (Defs. Mot. Dis., 17.)

16

In 2006, however, the parties executed an entirely new, wide-ranging, "Master Agreement" intended to govern their relationship just as the 2002 Agency Agreement had. (Comp., Ex. B ("[InterArch] agrees to provide professional services . . . as hereinafter described in this Master Agreement").) The 2006 Master Agreement overrode the 2002 Agency Agreement, adopting only select provisions from the prior, now defunct, agreement. Like the 2002 Agency Agreement, that 2006 Master Agreement outlined the types of services that InterArch could perform for Commerce, including design services, architectural services, and construction management. (Comp., Ex. B, Art. 1.) In other words, the same services as the 2002 Agency Agreement. Furthermore, also like the 2002 Agency Agreement, the 2006 Master Agreement articulated the basic principles underlying the parties' relationship, including indemnification, assignment, InterArch's status as an independent contractor, and termination. (Comp., Ex. B, Art. 6, 13, 14, 16, 18E.) In fact, the 2006 Master Agreement even incorporated specific, select portions of the 2002 Agency Agreement. (Comp., Ex. B, Art. 13-14).

That selective incorporation and the fact that the 2002 Agency Agreement and the 2006 Master Agreement deal with the same issues demonstrate that the 2006 Master Agreement superseded the 2002 Agency Agreement. Indeed, if the 2006 Master Agreement did not replace the 2002 Agency Agreement, the 2006 Master Agreement would not have needed to incorporate select provisions from the 2002 Agency Agreement. Instead, those selectively incorporated provisions would have applied by their own force.

Defendants entirely ignore those facts and instead argue that the 2006 Master Agreement was an agreement made pursuant to the 2002 Agency Agreement. (Defs. Mot. Dis., 8, 17.) The 2002 Agency Agreement states that the "specific Services required of InterArch by Commerce for any individual Project as well as the specific compensation and other terms and

17

conditions shall be set forth in a separate agreement . . . ." (Compl., Ex. C, ¶ 2 (the "specific services" provision)). The 2002 Agency Agreement also states that "the terms set forth in this Agreement shall be deemed a part of any such separate agreement." (*Id.*) Defendants argue that the 2006 Master Agreement is such a "separate agreement" setting forth the "specific services required of InterArch by Commerce for any individual Project as well as the specific compensation and other terms and conditions," and not a new overall agreement. (Defs. Mot. Dis., 8, 10, 17-18.) As such, they argue, the 2006 Master Agreement could not have overridden the 2002 Agency Agreement. (*Id.*) In fact, to the contrary, Defendants contend that the 2002 Agency Agreement's terms apply by their own force to the 2006 Master Agreement. (*Id.*)

Defendants' argument suffers from numerous problems. First, Defendants' reading of the "specific services" provision is far from the most logical one. Rather, the most straight-forward way to read the "specific services" provision is as a reference to InterArch's pattern and practice of submitting a yearly proposal of services to Commerce, which "included both a list of services that InterArch intended to perform for Commerce and a rate schedule for that work," and Commerce's yearly pattern and practice of accepting that proposal, sometimes in writing. (Compl., ¶¶ 70-71, 84.) Indeed, InterArch's proposals perfectly fit the 2002 Agency Agreement's description of a "separate agreement" for "specific services."

Second, and by contrast, the 2006 Master Agreement does not match that description. The 2006 Master Agreement does not actually detail "specific compensation and other terms and conditions." Instead, other than two references to flat fees, the 2006 Master Agreement refers to an attached copy of InterArch's proposal of services for compensation and

18

similar items. (Compl., Ex. B, Art. 2 ("See Addendum B 2006 Rate Schedule").)[3] Thus, rather than stretching the "specific services" provision to incorporate the 2006 Master Agreement, that provision should be given its plain meaning, as a reference to the proposal of services.

Third, Defendants' argument fails to explain why the 2006 Master Agreement specifically failed to include an arbitration provision—or as explained later, a forum selection provision—unless the drafters of the 2006 Master Agreement intended to leave that provision out. Indeed, reading the 2006 Master Agreement in the manner suggested by Defendants violates the bedrock principle of construction "that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded." *Plumbers & Steamfitters v. Vertex Const.*, 932 F.2d 1443, 1449 (11th Cir. 1991); *accord In Re New Seabury Co. Ltd. P'ship*, 450 F.3d 24, 37 (1st Cir. 2006) (similar); *Gabel v. Manetto*, 427 A.2d 71, 73, 177 N.J. Super. 460, 464 (N.J. Super. Ct. App. Div. 1981) ("An affirmative expression ordinarily implies a negation of any other alternative" under the maxim "[e]xpressio unius est exclusio alterius.").

Fourth, interpreting the 2006 Master Agreement as an agreement governed by the 2002 Agency Agreement creates a number of inconsistencies. For instance, the choice-of-law provision in Article 18(A) of the 2006 Master Agreement, which states that the "[a]greement shall be governed by . . . the laws of the state wherein the Project is located," cannot be reconciled with the choice-of-law provision in the 2002 Agency Agreement, which states that the agreement is to be fully performed in and governed by New Jersey law. (Compl., Ex. B, Art. 18(A); Ex. C ¶ 10.)

---

[3]    Article 1 of the 2006 Master Agreement refers to compensation, but those same terms are detailed, along with other fees, in the proposal of services attached to that agreement. (Compl., Ex. B, Art. 1-2.)

19

Accordingly, the 2006 Master Agreement supersedes the 2002 Agency Agreement. Therefore, the 2006 Master Agreement, which does not contain an arbitration provision, applies and Defendants' motion to dismiss should be denied.

### D. InterArch Did Not Assign Its Rights in the Copyrights That Commerce Has Infringed

InterArch alleges that Commerce infringed its "copyrights." (Compl., ¶¶ 136-44.) Commerce argues that InterArch has failed to state a claim because the 2006 Master Agreement transferred ownership of the copyrights at issue to Commerce. (Defs. Mot. Dis., 33.) The 2006 Master Agreement, however, transferred ownership only of "Instruments of Service," *e.g.,* the physical drawings and plans, or at most, a limited license to use InterArch's designs, not InterArch's underlying copyrights. Either way, because the rights to InterArch's underlying copyrights were not transferred, Defendants' motion to dismiss the copyright claim should be denied.

The 2006 Master Agreement transferred ownership of certain material objects, *i.e.,* Instruments of Service, not underlying copyrights, from InterArch to Commerce. The relevant provision of the 2006 Master Agreement, Article 8(D) reads as follows:

> All *Instruments of Service* shall be the sole property of [Commerce], and [Commerce] is vested with all rights therein, whether created by law or in equity; provided that [InterArch's] designs, drawings or specifications may not be used by [Commerce] for any other project unless [Commerce] provides prior notice to [InterArch] and agrees to pay a reasonable fee for such use.

(Compl., Ex. B, Art. 8(D) (emphasis added).) And Article 8(A) defines "Instruments of Service" as:

> All plans, designs, drawings, specifications, studies and other instruments of service produced for the Project by or on behalf of [InterArch] pursuant to this Agreement ("Instruments of Service") shall (i) contain all information necessary to obtain the requisite

> regulatory permits; (ii) conform to applicable laws, statutes, ordinances and governmental rules and regulations . . . (iii) be accurate and complete and meet generally accepted professional standards and principles; and (iv) be suitable for the intended purpose and use.

(Compl., Ex. B, Art. 8(A).) Thus, Commerce owns "[a]ll plans, designs, drawings" and similar material items that InterArch created pursuant to the 2006 Master Agreement.

Under the Copyright Act, provisions like those quoted above are insufficient to transfer copyright ownership. To the contrary, the Copyright Act provides that, "[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied" and the "[t]ransfer of ownership of any material object . . . does not of itself convey any rights in the copyrighted work embodied in the object." 17 U.S.C. § 202. Thus, in other words, ownership of a copyright is distinct from ownership of the material object in which the copyrighted work is embodied. *See Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86, 91 (S.D.N.Y. 1996). As then-Judge Ruth Bader Ginsburg noted in interpreting the Copyright Act, a party may transfer "ownership of a material object"— even the original material object—and still retain the underlying copyright. *See Community for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1487 n.4 (D.C. Cir. 1988).

Because the 2006 Master Agreement references only material objects and does not refer to—or even allude to—any transfer of the underlying copyrights, that provision is insufficient to transfer copyright ownership. Furthermore, even if there were any ambiguity in the 2006 Master Agreement, "the contract will be read to transfer only the material object, not ownership of the copyright itself." *Shugrue v. Cont'l Airlines*, 977 F. Supp. 280, 285 (S.D.N.Y. 1997). Thus, the motion to dismiss should be denied.

21

At most, the 2006 Master Agreement might be read to confer a non-exclusive, limited license for Commerce to use certain materials embodying InterArch's copyrights, rather than a transfer of ownership of the copyrights to Commerce. Even if this Court were to find that Commerce is entitled to such a license under the contract, it would not support Defendants' argument that the copyright claim should be dismissed. A licensor of copyrighted materials (*i.e.*, InterArch, if one assumes that such a license exists under the 2006 Master Agreement) "can still bring suit for copyright infringement" because "a non-exclusive license does not transfer ownership of the copyright from the licensor to the licensee." *MacLean Assocs., Inc. v. Wm. M. Mercer-Heidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991). Accordingly, even if one were to construe the 2006 Master Agreement in Defendants' favor and find that Commerce has a limited license to use certain materials embodying InterArch's copyrights, InterArch's copyright infringement claim should not be dismissed.

Defendants' assertion that InterArch has transferred its copyrights to Commerce is incorrect as a matter of law, and the motion to dismiss on that basis should be denied.

## II.    DEFENDANTS' MOTION TO DISMISS OR TRANSFER BASED ON IMPROPER VENUE SHOULD BE DENIED

### A.    Venue is Proper in This District

Defendants argue that the Complaint should be dismissed for lack of venue in this district because the forum-selection clauses in Plaintiffs' contracts provide for exclusive venue in New Jersey. Defendants' arguments fail because (i) it is uncontested that the statutory requirements for venue in this district are satisfied, and (ii) the appropriate vehicle for enforcing a forum-selection clause is a motion to *transfer* venue (rather than a motion to *dismiss* for lack of venue).

The statutory requirements for venue in this district are satisfied. Venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The Complaint alleges that several meetings and contacts between the director Defendants and the OCC occurred in the District of Columbia. (Compl., ¶ 51.) These meetings and contacts are at the heart of the Complaint because it is alleged that Defendants acted at the behest of the OCC when they terminated Mr. Hill, breached Plaintiffs' contracts, and violated their rights. For example, the Complaint alleges that it was in response to "pressure," "threats," and the exercise of "coercive power" by the OCC that Commerce terminated Mr. Hill. (Compl., ¶¶ 48-54.) The Complaint also alleges that it was at the "direct[ion]" of the OCC, and in response to the exercise of "coercive power" by the OCC, that Commerce refused to pay monies owed to InterArch. (Compl., ¶¶ 92-95.) It is a fair reading of the Complaint that these interactions occurred in substantial part in the meetings and contacts that are alleged to have occurred in the District of Columbia, where Commerce's regulatory counsel was also located. (Compl., ¶¶ 11, 27, 28, 51.) Defendants do not argue as part of their motion to dismiss that, but for the forum-selection clauses, venue would not otherwise be proper. (Defs. Mot. Dis., 11-13.) Because the statutory requirements of venue are met, the motion to dismiss should be denied.

Defendants argue that the Complaint should be dismissed for lack of venue because Plaintiffs' claims are subject to forum-selection clauses that require the claims to be brought in New Jersey. (Defs. Mot. Dis., 11-13.) This argument is wrong for two reasons: (i) as explained in more detail below, only three out of the thirteen claims in the Complaint are possibly subject to a forum-selection clause, and those claims are made by only one Plaintiff (Mr.

23

Hill) against one Defendant (Commerce Bancorp)[4]; and (ii) the existence of a forum-selection

clause is a factor to be considered when determining whether to *transfer* venue pursuant to 28

U.S.C. § 1404(a), not a basis on which to *dismiss* claims pursuant to 28 U.S.C. § 1406.

   With respect to the second point, Defendants acknowledge that when venue is

otherwise proper, a forum-selection clause is a factor to be considered in determining whether to

transfer—rather than dismiss—covered claims. (Defs. Mot. Dis., 14.) Indeed, in *Marra v.*

*Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000), the D.C. Circuit observed that "most courts

and commentators have characterized [the invocation of a forum-selection clause] as a venue

objection analogous to a forum non conveniens motion or motion for transfer of venue under 28

U.S.C. § 1404(a)."

   The approach articulated in *Marra*—that a forum-selection clause should be

considered in connection with a motion to *transfer,* rather than a motion to *dismiss*—follows

Supreme Court precedent.  In *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), the

defendants objected to venue based on a forum-selection clause and moved (i) to dismiss

pursuant to 28 U.S.C. § 1406, and (ii) to transfer pursuant to 28 U.S.C. § 1404(a).  The district

court denied both motions.  487 U.S. at 24.  The Eleventh Circuit reversed and directed the

district court to transfer venue.  *Id.* at 25.  On appeal to the Supreme Court, the Court noted that

the parties did not dispute that the motion to dismiss for lack of venue was "properly denied"

because the statutory requirements for venue in the forum where the litigation was commenced

were met.  *Id.* at 29, n.8; *see also Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 299 (3d

Cir. 2001) ("[A]s a general matter, it makes better sense, when venue is proper but the parties

---

[4] See *infra* at pages 28-30 for a more detailed discussion of the scope of the forum-selection
 clauses at issue.

have agreed upon a not-unreasonable forum-selection clause that points to another federal venue, to transfer rather than dismiss.").

Because the statutory requirements for venue in this district have been met, Defendants may invoke the forum-selection clauses cited above only in support of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), not in support of a motion to dismiss. Accordingly, Defendants' motion to dismiss for lack of venue should be denied.

**B.    Defendants Have Not Met Their Heavy Burden to Upset Plaintiffs' Choice of Venue**

Upon a motion to transfer venue, the "[p]laintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32 (D.D.C. 2008) (quotation omitted). In an attempt to upset Plaintiffs' choice of venue, Defendants have argued, as an alternative to their motion to dismiss for lack of venue, that venue should be transferred out of this District to New Jersey because (i) the forum-selection clauses in Mr. Hill's Employment Agreement and the 2002 Agency Agreement indicate that litigation should be commenced in New Jersey, and (ii) the convenience and interest-of-justice factors articulated in 28 U.S.C. § 1404(a) counsel in favor of transferring venue to New Jersey. As explained below, Defendants' motion to transfer should be denied because: (i) Defendants have not demonstrated that convenience favors adjudicating this matter in New Jersey; (ii) only a small minority of the claims in the Complaint are subject to a forum-selection clause; and (iii) enforcing the applicable forum-selection clause as to those three claims is contrary to public policy because it would result in piecemeal litigation.

*1.    The Convenience Factors Favor Litigating in the District of Columbia*

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under that provision, district courts have discretion to transfer venue according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org.,* 487 U.S. at 29 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). Even where a valid forum-selection clause exists, it is the moving party's burden to demonstrate why the plaintiffs' choice of forum is inappropriate. *See Worldwide Network Servs., LLC, v. Dynacorp Int'l,* 496 F. Supp. 2d 59, 61-62 (D.D.C. 2007). And "usually a strong presumption exists in favor of the plaintiffs' choice of forum." *Mathis v. Geo Group, Inc.,* 535 F. Supp. 2d 83, 86 (D.D.C. 2008). In fact, this is exactly the situation that the Supreme Court contemplated in *Stewart Organization,* where it explained that "[i]t is conceivable . . . that because of [the factors in 28 U.S.C. § 1404(a)] a district court . . . would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause." 487 U.S. at 30-31.

Defendants argue that litigating in New Jersey would be more convenient because: (i) Plaintiffs and Commerce Bancorp reside or are incorporated in New Jersey; (ii) all parties conduct business in New Jersey, but some of them do not conduct business in this district; (iii) some of the claims will be interpreted under New Jersey law; and (iv) "related litigation" is pending in New Jersey, (Def. Mot. Dis., 16).

None of the factors cited by Defendants in support of transferring this matter to New Jersey is convincing, for the following reasons: (i) by suing in this district, Plaintiffs have expressed a strong preference in favor of litigating in this district, and thus their status as New Jersey residents is not relevant; (ii) the state of incorporation and headquarters of Commerce

26

Bancorp are not key considerations because, as the Complaint alleges, Commerce operates

branches and otherwise conducts substantial business in the District of Columbia, (Compl., ¶¶ 23,

24, 31); (iii) the assertion that none of the individual Defendants conducts business in this district,

(Defs. Mot. Dis., 15), should not be considered because that assertion has not been supported

with affidavits, *see Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 n.2 (3d Cir. 1973) (generally,

in motion to dismiss for convenience of witnesses, factual assertions should be described in

detail in affidavits); (iv) Defendants' assertion that New Jersey law applies to all claims is not

necessarily correct with respect to certain claims, such as the *Bivens* claims and the copyright

claim; and (v) the so-called "related litigation" in New Jersey federal court has been dismissed,

*see* Order and Final Judgment, *Lucas v. Hill, et al.*, No. 07-cv-0349 (RBK) (D.N.J. entered May

9, 2008), and it was essentially unrelated to this litigation because it did not address Defendants'

liability for Plaintiffs' *Bivens* claims, copyright infringement, employment claims, or contract

claims.

   In addition to the paramount factor that Plaintiffs have expressed their preference

for litigating in the District of Columbia, several other factors counsel in favor of litigating in the

District of Columbia. Plaintiffs' counsel is located in the District of Columbia. Commerce's

primary counsel for interacting with the OCC is based in the District of Columbia. Plaintiffs

intend to conduct extensive discovery from the OCC, which is headquartered in the District of

Columbia. Indeed, the key OCC witnesses that Plaintiffs will subpoena all work in the District

of Columbia. If this matter were to proceed to trial in New Jersey, Plaintiffs would be unable to

compel the key OCC witnesses' attendance because the District of New Jersey is greater than

100 miles from where they live and work. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). Instead, Plaintiffs

would be forced to rely upon the deposition testimony of the OCC witnesses at trial pursuant to

Fed. R. Civ. P. 32(a)(4)(B). The potential loss of the opportunity to present live testimony from key OCC witnesses at trial could result in substantial prejudice to Plaintiffs, especially given the significant role of the OCC as alleged in the Complaint.

Because Defendants have not met their heavy burden to upset Plaintiffs' choice of venue in this district, the motion to transfer venue should be denied.

**2.    *Only Three of the Thirteen Claims in the Complaint Implicate a Forum-Selection Clause***

Defendants argue that the Complaint should be transferred because of the forum-selection clauses in Plaintiffs' contracts. Plaintiffs' *Bivens* claims, however, are not subject to a forum-selection clause because the *Bivens* claims exist independently of Plaintiffs' contracts. Also, none of Mrs. Hill's or InterArch's claims are subject to a forum-selection clause because InterArch's 2006 Agreement with Commerce does not contain or incorporate any forum-selection clause. Accordingly, only three of the thirteen claims implicate a forum-selection clause, and thus, transferring the entire Complaint based on the forum-selection clauses would be inappropriate.

Paragraph 18.9 of Mr. Hill's Employment Agreement states as follows:

**18.9 New Jersey Jurisdiction.** Commerce and Hill irrevocably, voluntarily, knowingly and expressly consent to:

**(a) Courts in Camden, NJ.** The exclusive jurisdiction of the Superior Court, Law Division, Camden County, New Jersey or the United States District Court for the District of New Jersey, Camden Vicinage, to enforce this Agreement, or to resolve any claim, controversy or dispute *involving it* . . . .

(Compl., Ex. A, § 18.9(a) (emphasis added).) Defendants assert that this clause applies to all of Mr. Hill's claims. With respect to the *Bivens* claim, Defendants' attempt to invoke the forum-selection clause should fail for two reasons.

28

First, the individual Directors—who are the only Defendants for the *Bivens*

claims—were not parties to Mr. Hill's Employment Agreement. Rather, the only parties to Mr.

Hill's Employment Agreement are Mr. Hill and Commerce Bancorp. (Compl., Ex. A., p. 1.)

Accordingly, the individual director Defendants cannot invoke the forum-selection clause. *See*

*McNeill v. Zoref*, 687 A.2d 1052, 1055-56, 297 N.J. Super. 213, 220-21 (N.J. Super. App. Div.

1997) (defendant who was non-signatory to contract with forum-selection clause cannot invoke

that clause for purposes of motion to transfer venue).

Second, Mr. Hill's *Bivens* claim does not "involv[e]" his Employment Agreement

and thus is not subject to the forum-selection clause. (Compl., Ex. A, § 18.9(a).) Mr. Hill's

*Bivens* claim does not involve or rely upon the existence of his employment contract. As

explained in the Complaint, Mr. Hill's *Bivens* claim has two components: One component is that

Mr. Hill alleges that by conspiring with the OCC to terminate him, the director Defendants acted

under color of federal law to violate his constitutionally-protected property right to continued

employment without interference from government agents. (Compl., ¶ 128.) *See Greene v.*

*McElroy*, 360 U.S. 474, 492 (1959) ("[T]he right to hold specific private employment" is a

protected right under the Fifth Amendment.); *Downey v. The Coal. Against Rape and Abuse, Inc.*,

143 F. Supp. 2d 423, 442 (D.N.J. 2001) ("When government officials are involved in the

deprivation . . . private employment is a property interest."). Another component is that Mr. Hill

claims that the director Defendants violated his due process rights by colluding with the OCC to

circumvent the procedural protections that Mr. Hill would have been entitled to had the OCC

followed the prescribed regulatory mechanism for removing Mr. Hill from Commerce. (Compl.,

¶ 129.) *See* 12 U.S.C. § 1818(e).

29

Neither of these constitutional rights depends upon the existence of Mr. Hill's Employment Agreement. Further, the issue of whether Defendants violated these constitutional rights is distinct from the issue of whether Commerce Bancorp violated Mr. Hill's Employment Agreement. Indeed, had Commerce Bancorp fulfilled all of the contractual obligations triggered by its termination of Mr. Hill without cause, Mr. Hill would still possess a valid *Bivens* claim against the director Defendants. Thus, Mr. Hill's *Bivens* claim does not "involv[e]" his Employment Agreement, and the claim is not subject to the forum-selection clause in Mr. Hill's Employment Agreement.[5]

Defendants also argue that certain of Mrs. Hill's and InterArch's claims are subject to a forum-selection clause mandating that their claims be brought in New Jersey. Defendants are incorrect for two reasons.

First, the individual director Defendants—who are the only defendants on Mrs. Hill's *Bivens* claim—are not parties to either the 2002 Agency Agreement or 2006 Master Agreement. Accordingly, they cannot invoke any forum-selection clause in either of those contracts with respect to Mrs. Hill's and InterArch's *Bivens* claims.

Second, with respect to the claims raised by InterArch and Mrs. Hill, there is no applicable forum-selection clause. The 2002 Agency Agreement contains a forum-selection clause, but the 2006 Master Agreement does not. And as explained above, only the 2006 Master Agreement applies to the claims at issue because that agreement superseded the 2002 Agency Agreement. As such, none of the claims raised by Mrs. Hill or InterArch is subject to a forum-selection clause.

---

[5]  Like the *Bivens* claim, Count 13—for intentional infliction of emotional distress—does not rely upon the existence of Mr. Hill's Employment Contract or otherwise "involve" it, and thus is not subject to the forum-selection clause in Mr. Hill's contract.

**3.    *The Court Should Exercise its Discretion Not to Transfer the Forum-Selected Claims in This Case***

This Court has discretion in deciding whether to transfer venue pursuant to 28

U.S.C. § 1404(a), even when there is a valid forum-selection clause that identifies a different

district as the appropriate venue. *See Stewart Org.*, 487 U.S. at 31. Defendants contend that all

claims in the Complaint should be transferred because they assert that all claims in the

Complaint are subject to a forum-selection clause. As explained above, this assertion is incorrect

because only three of thirteen claims in the Complaint are subject to a forum-selection clause.

This Court should not enforce the forum-selection clause on those three claims because to do so

would result in an undesirable situation, *i.e.*, related claims proceeding in two different

jurisdictions. Accordingly, this Court should decline the motion to transfer venue.

The Supreme Court has clarified that the existence of a forum-selection clause is

not dispositive of whether an action should be transferred pursuant to § 1404(a). *See Stewart*

*Org.*, 487 U.S. at 31. Rather, the presence of a forum-selection clause and the enforceability

thereof under state law are simply factors to be considered when determining whether to transfer

venue pursuant to § 1404(a). *Id.*

In *Stewart Organization*, the Supreme Court addressed "whether a federal court

sitting in diversity should apply state or federal law in adjudicating a motion to transfer a case to

a venue provided in a contractual forum-selection clause." *Id.* at 24. The district court had

applied state law and refused to enforce a forum-selection clause that was contrary to Alabama

public policy. The Eleventh Circuit reversed, holding that federal common law, as articulated in

31

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), controlled.[6]  The Supreme Court

held that §1404(a), as opposed to either state public policy or federal common law, controlled:

> The forum-selection clause, which represents the parties'
> agreement as to the most proper forum, should receive neither
> dispositive consideration (as respondent might have it) nor no
> consideration (as Alabama law might have it), but rather the
> consideration for which Congress provided in § 1404(a).

487 U.S. at 31.

Enforcing a forum-selection clause that results in inefficient, piecemeal litigation

is contrary to New Jersey and federal public policy.  In *McNeill v. Zoref*, 687 A.2d 1052, 297 N.J.

Super. 213 (App. Div. 1997), the plaintiff sued several defendants, raising multiple claims

stemming from a mortgage transaction.  The Superior Court determined that a forum-selection

clause contained in a mortgage brokerage services agreement placed jurisdiction over the action

in New York County, New York, and dismissed the complaint.  687 A.2d at 1054, 297 N.J.

Super. at 218.  The Appellate Division reversed, refusing to enforce the forum-selection clause

on public policy grounds.  Specifically, the Appellate Division found that the forum-selection

clause applied to only one of the defendants because it could be enforced by one defendant in the

litigation only.  687 A.2d at 1056, 297 N.J. Super. at 221.  The appellate court held that

dismissing just one defendant was contrary to New Jersey's entire controversy doctrine because

it would result in piecemeal litigation.  687 A.2d at 1057, N.J. Super. at 223-24.

It is also federal public policy to avoid piecemeal litigation where possible.  As

the District of Columbia Circuit Court of Appeals has explained:

---

[6]   In *The Bremen*, the Supreme Court held that "[a] contractual choice-of-forum clause should
be held unenforceable if enforcement would contravene a strong public policy of the forum
in which suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15
(citing *Boyd v. Grand Trunk W.R. Co.*, 338 U.S. 263 (1949)).

> [S]imultaneous litigation of allegedly different claims arising out
> of single controversy poses many of the same risks as do
> successive lawsuits that either arise out of a common nucleus of
> operative fact or involve the application of settled legal issues to
> substantially identical facts involving the same parties. All such
> multiplicative proceedings tax an already overburdened judicial
> system, as well as unfairly burden victors with the costs of meeting
> the vanquished yet again in legal combat.

*N.Y. Shipping Ass'n v. Fed. Mar. Comm'n*, 854 F.2d 1338, 1352 (D.C. Cir. 1988).

In sum, the forum-selection clause in Mr. Hill's employment contract should not be enforced because to do so would result in piecemeal litigation, in violation of New Jersey and federal public policy. Rather, the Court should permit the litigation to proceed in this district, pursuant to Plaintiffs' choice.

## III. THIS COURT POSSESSES SPECIFIC PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

Plaintiffs believe that the allegations in the Complaint, together with discovery on this issue, support or will support specific personal jurisdiction over the individual Defendants based on their contacts with this district. Defendants contend that this Court lacks personal jurisdiction over the individual Defendants because (i) the Complaint fails to allege the individual Defendants' jurisdictional contacts with the District of Columbia with sufficient particularity, and (ii) the "corporate shield" doctrine prevents this Court from considering the individual director Defendants' business contacts on behalf of Commerce in this district to establish personal jurisdiction over them. Defendants are wrong on these points because (i) Defendants' own conduct is to blame for Plaintiffs' lack of more specific information relating to the actions taken by the directors, and (ii) the corporate shield doctrine does not apply to the specific allegations in the Complaint.

33

Specific personal jurisdiction exists over the director Defendants pursuant to the District of Columbia long-arm statute because they transacted business and otherwise had contacts in this district that gave rise to the claims against them. D.C. Code § 13-423(a)(1). Specifically, the Complaint alleges that the individual director Defendants attended business meetings and had other contacts with the OCC in the District of Columbia, which culminated in the individual Defendants acting as federal agents under color of law to violate Plaintiffs' constitutional rights. (Compl., ¶¶ 11, 27, 32, 33, 46, 51, 56, 126-30.) Accordingly, the Complaint alleges facts establishing that this Court possesses specific personal jurisdiction over the individual director Defendants.

Defendants contend that this Court lacks personal jurisdiction over the individual Defendants because the Complaint fails to allege their contacts with the District of Columbia with sufficient particularity. (Defs. Mot. Dis., 19-23.) This argument ignores the fact that any perceived lack of specificity as to the allegations of the individual Defendants' contacts with the District of Columbia stems from their own improper exclusion of Mr. Hill from meetings with the OCC. (Compl., ¶ 51.)

Under these circumstances, the court should not dismiss for lack of personal jurisdiction without permitting Plaintiffs to conduct discovery as to the individual Defendants' contacts with the District of Columbia.[7] *See El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) (reversing dismissal of claims for lack of personal jurisdiction and remanding to allow discovery of jurisdictional facts). This is especially true where, as here, the inability to make more specific allegations is the result of Defendants' own improper conduct. *Cf., Hosp.*

---

[7]    Plaintiffs also request to conduct jurisdictional discovery with respect to Defendant Scott Hite, who is alleged to have willfully stolen employees from InterArch. (Compl., ¶¶ 103-113.)

*Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976) ("in antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." (citation omitted)).

Defendants argue that the "corporate shield" (also called the "fiduciary shield") doctrine precludes this Court from exercising personal jurisdiction over the director Defendants. Defendants claim that under the corporate shield doctrine, "jurisdiction cannot rest on contacts made solely in their corporate capacities," and thus meetings with the OCC in this district relating to Commerce business cannot be used to establish personal jurisdiction in this district over the director Defendants. (Defs. Mot. Dis., 22-23.)

Defendants' arguments regarding the corporate shield doctrine miss the mark for several reasons. As an initial matter, courts in this district have "h[e]ld that the fiduciary shield does not apply to" the District of Columbia long-arm statute section relating to transacting business in the District of Columbia.[8] *Chase v. Pan-Pacific Broad., Inc.*, 617 F. Supp. 1414, 1424 (D.D.C. 1985). And, as alleged in the Complaint, the individual director Defendants did come to this district in person to transact business in meetings with the OCC, and it was those

---

[8]   Several federal appellate courts, interpreting other state statutes, have held that if a state's long-arm statute is coextensive with the due process clause, the corporate shield doctrine does not apply. *See Pittsburgh Terminal Corp. v. Mid-Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989). This is because the federal due process clause does not have any limitation such as the corporate shield doctrine as articulated by Defendants. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (rejecting the suggestion that "employees who act in their official capacity are somehow shielded from suit in their individual capacity"). The District of Columbia long-arm statute section relating to transacting business in the District is as broad in reach as the federal due process clause. *Gonzales, v. Internacional de Elevadores*, 891 A.2d 227, 234 (D.C. 2006); *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 326 (D.C. 2000). Accordingly, it follows that the corporate shield doctrine should not apply to the District of Columbia long-arm statute, just as it does not apply to the federal due process clause.

contacts that gave rise to the claims against the individual director Defendants. (Compl., ¶¶ 11, 27, 28, 51.) Furthermore, in *Johns v. Rozet*, 770 F. Supp. 11, 18 (D.D.C. 1991), the court cited *Chase* for the propositions that the "fiduciary shield does not apply to motions to dismiss," and that the "defense that [an] individual is not liable because he was acting for a disclosed corporate principal goes to the merits of the case, not to the power of the court to make the adjudication." 770 F. Supp. 11, 18 (D.D.C. 1991) (internal quotation marks omitted).

To the extent that the corporate shield doctrine applies, the issue is not one of hyper-technical application, as Defendants seem to suggest. Rather, the issue is "whether it will promote fairness to allow an individual to invoke [the corporate shield doctrine's] protection." *Johns*, 770 F. Supp. at 18. In this case, it would not promote fairness to allow the director Defendants to avoid litigating claims that they willfully conspired to violate Plaintiffs' rights. This is not a case where a low-level corporate employee is alleged to have engaged in a ministerial task on behalf of an employer. Instead, it is alleged that directors reached a secret "deal" with the regulators to terminate Mr. Hill and take certain other punitive actions against Plaintiffs, without due process, thus depriving them of their constitutional rights. (Compl., ¶¶ 48, 127-30, 132-34.) Accordingly, it is fair to exercise personal jurisdiction over the individual director Defendants in this case.

Moreover, the fiduciary shield doctrine is irrelevant to the present case. Defendants seem to be arguing that the Complaint should be read narrowly so as to allege only that the director Defendants were acting on behalf of the Bank, when, in fact, the Complaint has named the directors as defendants in their *individual* capacities, and alleged that they have taken actions that have benefited them personally. (Compl. ¶¶ 56, 127.)

36

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or transfer venue should

be denied.


Dated:  May 23, 2008


                        Respectfully submitted,


                        _____
                        Andrew L. Sandler (D.C. Bar No. 387825)
                        Edward J. Meehan (D.C. Bar No. 413993)
                        Joseph L. Barloon (D.C. Bar No. 459626)
                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                        1440 New York Avenue, N.W.
                        Washington, D.C.  20005
                        (202) 371-7000
                        Attorneys for Plaintiff Vernon W. Hill, II


                        _____
                        F. Joseph Warin (D.C. Bar No. 235978)
                        GIBSON, DUNN & CRUTCHER LLP
                        1050 Connecticut Avenue, N.W.
                        Washington, D.C.  20036
                        (202) 995-8500
                        Attorneys for Plaintiffs Shirley Hill and
                        InterArch, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2008, I caused to be served copies of the Plaintiff's Opposition to Motion of Defendants to Dismiss or Transfer Venue and [Proposed] Order Denying Motion of Defendants to Dismiss or Transfer Venue through this Court's CM/ECF system, which will send notification of such filing electronically to registered counsel.  I further certify that on May 23, 2008, copies of the same were deposited in the U.S. Mail for delivery to Penny Shane, Esq., at Sullivan & Cromwell, 125 Broad Street, New York, NY  10004-2498, and William M. Tambussi, Esq., Brown & Connery, LLP, at 360 Haddon Avenue, Westmont, NJ  08108.

Joseph L. Barloon
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005-2111
Tel: (202) 371-7000

Counsel for Plaintiff Vernon W. Hill, II

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VERNON W. HILL, II, *et al.*,                    )
                                                 )
      Plaintiffs,                        )
                                                 )
vs.                                              )  Civil Action No. 1:08-cv-00059 (RBW)
                                                 )
DENNIS M. DIFLORIO, *et al.*,                    )
                                                 )
      Defendants.                        )

### [PROPOSED] ORDER

The Motion of Defendants to Dismiss or Transfer Venue is hereby **DENIED**.


**SO ORDERED**.


_____
HON. REGGIE B. WALTON
United States District Judge